## Santiago Don Moran v. The People.

*Statute construed: Rape: Force.* Under our statute (*Comp. L., 1857,* § 5730), force is an essential element of the crime of rape; and the force contemplated is something more than that which is always essential to the act of sexual intercourse itself, when performed with the assent of the woman.

*Charge to the jury: Rape: Force.* In a trial for rape, a charge to the jury, that, if the defendant procured the consent of the woman by means of false and fraudulent representations made for that purpose, that, as a part of his medical treatment of her, it was necessary for her to have carnal connection with him, and she believing and relying upon such representations, gave her consent, and had connection with him, he was guilty, is erroneous, for the reason that it leaves out and wholly ignores all idea of force as a necessary element of the crime.

*Statute construed: Rape: Force.* The force contemplated by the statute is not confined to the positive exertion of actual physical force in the act of compelling submission of the female to the sexual connection, but includes, also, any force or violence threatened, as the result of non-compliance, and for the purpose of preventing resistance, or extorting consent, and sufficient to create a real apprehension of dangerous consequences or great bodily harm, or in any manner to overpower the mind of the victim so that she dare not resist.

*Heard April 3. Decided July 13.*

Error to the Recorder's Court of the city of Detroit.

*H. H. Saunders, S. Larned*, and *F. A. Baker*, for the plaintiff in error.

*Dwight May, Attorney General*, for the People.

CHRISTIANCY, CH. J.

Plaintiff in error was tried in the recorder's court of the city of Detroit, upon an information charging him with having committed a rape upon Frances Jackson, a female of the age of ten years and more, to wit: of the age of sixteen years. The information was in the usual form, that he did ravish and carnally know the said Frances by force, and against her will.

The bill of exceptions is as follows:

"And on said trial, the People, to maintain the issue on their part, introduced evidence which tended to prove, that the father of the complaining witness, shortly before she was sixteen years of age, brought her to the house of the defendant, in Detroit, to be treated for consumption, the defendant claiming to be skilled in the treatment of diseases of that kind; that her father left her at defendant's house; that the defendant made an examination of her, and, after such examination, told her that the 'whites' had collected in her stomach; that she was ulcerated; that her uterus was inverted; that to save her life it would be necessary to enlarge her 'parts,' so that the 'whites' might pass off, to break the ulcers, and to turn the uterus; that he could do this with instruments, but the operation would probably kill her; that the only way would be for him to have carnal connection with her; that when she objected, he told her that it was what he did to all women who came to be treated by him; that he had told her father that it would be necessary, and he understood all about it, and had authorized the defendant to have connec-

tion with his daughter; that she, relying upon these representations, and believing them to be true, permitted the defendant to have connection with her; that if it had not been for such representations she would not have yielded; and that said representations were false, and known by the defendant to be so.

"The defendant, to maintain the issue on his part, introduced evidence tending to rebut that given by the prosecution.

"The court charged the jury as follows:

"'If you find that the defendant represented to the complaining witness that, as a part of his medical treatment, it was necessary for her to have carnal connection with him; that such representations were false and fraudulent; that she believed it, and, relying upon it, consented to the solicitations of the defendant, and had connection with him; and that such representations were made for the purpose of inducing her to give such consent, and that without it she would not have yielded, the defendant is guilty of the crime charged against him.

"'If the complaining witness did not believe the representations; was not deceived by them; or had sense and intelligence enough to know better than to believe them; or by the reasonable exercise of such faculties as she has, might have known better, and that the act was wrong, the defendant is not guilty.'

"To said charge, and each and every part thereof, the defendant then and there excepted."

It will be noticed that this charge leaves out, and wholly ignores, all idea of force as a necessary element of the crime charged; and the jury were, in effect, told that the defendant might be found guilty of the rape, though he neither used, nor threatened to use, any force whatever in case of her refusal, and though she might have assented

without any constraint produced by the fear or apprehension of force, or any dangerous, or serious, consequences to herself, if she refused or resisted. '

This feature of the charge is assigned as error, and presents the only question raised in the case by the plaintiff in error.

The definition of rape, as generally given in the English books, is, that "rape is the unlawful carnal knowledge, by a man of a woman, forcibly (or by force), and against her will."—*3 Coke's Inst. (Thomas Ed.), 549; 1 Hale P. C., 628; Hawkin's P. C., (Cur. Ed.), 122; 4 Bl. Com., 210; 1 Russ. on Cr. (Greanl. Ed.), 675.* This definition depended, perhaps, partly upon the common law, but mainly upon two early, and rather loosely worded, English statutes, one of which (*Stat. Westm. 2, ch., 34*) expressly made force an element in the crime, if the party were attainted at the king's suit (though not when the proceeding was by appeal), and the other (*Stat. Westm. 1, ch., 13*), which did not require force as an element, except as it might be inferred from the word, "ravished."—See *2 Bish. Cr. L.,* §§ *1067 to 1069,* where the substance of these statutes is given. And, as remarked by Mr. Bishop (*2 Bish. Cr. L.,* § *1073*), the more correct definition to be gathered from these statutes would have been, "Rape is the unlawful carnal knowledge, by a man of a woman, by force, when she does not consent." The difference between the two definitions, however, would seem to be important, only in cases where the female with whom the connection is had, may be said to have no will, as in the case of an idiot, or insane person, or one in a state of unconsciousness, in which cases, if anywhere, the force necessary to accomplish the act itself without resistance, could possibly be held to constitute the force contemplated by the definition of the offense.—See *Rex. v. Ryan, 2 Cox C. C., 115; Reg. v. Fletcher, Bell C. C., 63;*

*Reg. v. Camplin, 1 Den. C. C., 89.* But this particular class of cases has no special bearing upon the case now before us (and we do not discuss it); nor are we embarrassed by any uncertainty in the definition of the offense.

Our statute has adopted substantially the definition first above given from the English authorities. *Section 5730, Compiled Laws (of 1857),* declares, "If any person shall ravish and carnally know any female of the age of ten years or more, by force and against her will. * * he shall be punished," etc.

In the interpretation of this statute it is clear, that the terms, "by force," must not be wholly rejected or ignored, but that *some effect* must be given to them; and the language of the provision certainly requires something more to be shown than if these words had been omitted; and it is equally clear that if that particular kind and amount of force only is required which is always essential to the act of sexual connection itself, when performed with the assent of the woman, then no effect whatever is given to the terms, "by force," but the interpretation and the effect of the statute will be precisely the same as if these words were not contained in it. This interpretation, therefore, is not permissible. Some effect must be given to the words; and such has been the almost, if not entirely, uniform course of decision, both in England and in this country, where the definition of the offense is substantially the same as that given by our statute, when the charge has been for the actual commission of the rape upon a female of the age of proper discretion, of sound mind, and in full possession of her faculties, however fraudulent the means, or false the pretenses, by which her consent was procured. I have not been able to find a single well authenticated case, where the question was directly raised, in which it has been directly decided the other way. The anonymous case cited

in the note to *1 Wheeler's Cr. Cases, 381*, and referred to by Mr. Wharton (*Cr. Law*, § *1144*), and by Mr. Bishop (*2 Cr. Law*, § *1080*),—to the effect, that force is not necessary in the commission of rape, but that stratagem may supply its place,—is stated as a mere rumor of a decision made at Albany by Chief Justice Thompson, and, as very properly remarked by the court in *Walter v. The People, 50 Barb., 144*, "loose statements of this kind are entitled to no consideration whatever." In *State v. Shepard, 7 Conn., 54*, the woman was asleep, and did not discover the fact until defendant had violated her person; and her first impression was that it was her husband; as soon as she awoke and became sensible of the situation, he sprang from the bed. The charge was for an assault with intent to commit a rape. The prisoner's counsel contended that, if there was any carnal knowledge obtained, it was a rape, and the prisoner could not be convicted of the mere assault with intent, etc., as the less offense was merged in the greater. The only question discussed was, whether proof of a rape would sustain an indictment for an attempt to commit it; and, as very properly remarked by the counsel for plaintiff in error in the case before us, the counsel for the prisoner in that case overlooked a good defense in the attempt to maintain a frivolous one. The case of *Regina v. Stanton, 1 C. & K., 415*, has been sometimes cited as sustaining nearly the same doctrine as that cited from the note to *Wheeler's Cr. Cases*. But it was the case of an indictment for an assault with intent to commit a rape, where the prisoner, a physician, had obtained access to the person of the woman under pretense of administering an injection, and commenced to have carnal connection with her, when she, discovering it, got up and ran out of the room. This was clearly an assault,

and the only question was, whether the intent existed as charged.   As it did not appear that the prisoner had intended to use force, in case of resistance, it was, of course, but an assault only, and was so held by the court; but when the court say, that, if that intent had appeared, it would have constituted the completed offense of rape, they express an opinion upon a question not in the case.   This is not the only case in which it seems to have been obscurely shadowed forth, that, when the defendant has succeeded in obtaining the connection without force, actual or threatened, and without resistance, by falsely personating the husband, the mere intent to use force, had it become necessary to accomplish his purpose, would satisfy the requirement of force involved in the definition of rape (See *Rex v. Jackson, Russ. & Ry. C. C., 487*) ; and a similar idea seems to have been obscurely intimated in some American cases.   But, with all deference, I must be allowed to suggest, whether it has not resulted from confounding two distinct offenses—the completed offense of rape, and the attempt, or an assault with the intent to commit it.   And I am compelled to say, I am wholly unable to discover how the intent to resort to force in such cases, when it is not in fact either resorted to, or in any manner threatened, can be at all material upon the question, whether a rape has been committed, or how such intent, never brought to the notice of the woman by word or act, can satisfy the requirement of force in the legal definition of the offense; and such, I think, is the prevailing view of the English courts (See, among other cases, *Reg. v. Saunders, 8 C. & P., 265 ; Reg. v. Williams, id., 286 ; Reg. v. Clarke, Dears., 397; Reg. v. Fletcher, Law Reports, 1 Cr. Cases Reserved, 39 ; 14 Law T., N. S., 573 ; 12 Jur., N. S., 505*), as well as of the American courts; though such intent would, of course, con-

stitute a necessary and controlling element in a charge for an assault with intent to commit a rape, though in no way communicated to the intended victim.

But if we admit that the intent to resort to force, if required to accomplish the criminal purpose, in a case like the present, would, though never used or threatened, constitute the transaction a rape, this would not sustain the charge in the present case, which did not even require the existence of such intent.

The true rule as to force in cases of rape generally, was recognized by this court in *People v. Valentine Cornwell* (not *Crosswell v. The People*, as printed in the report), *13 Mich.*, *433*, where it was said, that "the essence of the crime is not the fact of intercourse, but the injury and outrage to the feelings of the woman by means of the carnal knowledge effected by force."   And there being no force used or threatened in that case, but strong grounds for believing that the woman was the soliciting party, the connection was properly held not to constitute rape, though the woman was not of sound mind, and had no intelligent understanding at the time the act was committed, but was in good physical health.   In cases where the woman is entirely insensible from idiocy, or from the effect of drugs administered (though the point is not here involved), it may be entirely right to hold a very slight degree of force sufficient; and that amount of force which, in such cases, would always be necessary, beyond what would be required with a consenting party, might, perhaps, properly be held, as it sometimes has been held, sufficient to make the transaction a rape, as suggested by my brother Cooley in *People v. Cornwell, ubisupra.*

And when drugs are administered, or procured to be administered, by the criminal, for the purpose of taking

away or lessening the power of resistance, and having that effect, there may be no ground for distinction between the force thus exerted by him through the agency of the drugs, and that directly exerted by his hand and for the same purpose.

The only question really involved in *People v. Cornwell*, above cited, was whether, under the circumstances of that case, the defendant could be held guilty without proof of force in any form, actual or threatened, and it was, I think, properly held by us that he could not. But after disposing of this, the only question in the case, an intimation was thrown out—for which I admit, and claim, a full share of the responsibility—that when a woman's consent is obtained by fraud, she at the time supposing the man to be her husband, the connection thus obtained may constitute rape. No such question was involved or argued; and we suppose it to be well understood by judges and the profession, that intimations and suggestions of this kind, in no way necessary to the decision of the case, are not always, or generally, as carefully considered and examined as the questions upon which the case itself turns; and hence the familiar rule, that judicial opinions are to be considered as authority, and construed, only *secundum subjectam materiam*.

If the statute, or the definition of rape, did not contain the words "by force," or "forcibly," doubtless a consent procured by such fraud as that referred to, might be treated as no consent; but the idea of force cannot be thus left out and ignored, nor can such fraud be allowed to supply its place, though it would doubtless supply, and satisfy, all the other terms of the definition; and, so far as the intimation in question is to be understood as going further and dispensing with all idea of force, it must be understood as

an intimation of the court of what, in their opinion, the law ought to be, rather than what it is. And, upon abstract principles of right and wrong, a sexual connection obtained by falsely and fraudulently personating the husband of a woman, or by a physician fraudulently inducing a female patient to believe such connection essential to a course of medical treatment, must be considered nearly, if not quite, as criminal and prejudicial to society as when obtained by force or any apprehension of violence; and it might, and in my opinion would, be judicious for the legislature to make some provision for punishment in cases of this kind. But it is not for the judiciary to legislate, by straining the existing criminal law to bring such cases within it.

For the reasons given, I think the judgment of the recorder's court should be reversed, and a new trial awarded.

And with reference to a new trial, it is proper for the guidance of the recorder's court, to consider the nature of the evidence set forth in the record, and which will probably appear upon the new trial, and to determine what charge the state of facts would warrant; or, whether there was any thing in the evidence which would authorize the jury to find that the carnal connection was obtained " by force, and against the will " of the party injured.

We think it is well and properly settled that the terms, " by force," do not necessarily imply the positive exertion of actual physical force in the act of compelling submission of the female to the sexual connection; but that force or violence threatened as the result of non-compliance, and for the purpose of preventing resistance, or extorting consent, if it be such as to create a real apprehension of dangerous consequences, or great bodily harm, or such as in any manner to overpower the mind of the victim so that she dare not resist, is, and upon all sound principles must be, regarded, for this purpose, as in all respects equivalent to

force actually exerted for the same purpose.   See *Reg. v. Hallett, 9 C. & P., 748; Reg. v. Day, id., 722; Wright v. The State, 4 Humph., 194; Pleasant v. The State, 8 Eng., 360*; and see *Strang v. The People, 24 Mich., 1.*   Nor, as appears by the case last cited, need the threats be of force to be used in accomplishing the act; as in that case the principal threat was, that if she refused he would take her away where she could never get back.   In fact, we think the terms of the statute in reference to force, are satisfied by any sexual intercourse to which the woman may have been induced to yield, only through the constraint produced by the fear of great bodily harm, or danger to life or limb, which the prisoner has, for the purpose of overcoming her will, caused her to apprehend, as the consequence of her refusal, and without which she would not have yielded.

It remains only to apply these principles to the present case.

Considering the way, and the purpose for which, the girl had been placed by her father under the care and treatment of the defendant, as her physician, the evidence had a tendency to show, and the jury might properly have found, that the girl was induced by the defendant to submit to the sexual intercourse with him, from the fear and under the apprehension, falsely and fraudulently inspired by the defendant for the purpose of overcoming her opposition, that, if she did not yield to such intercourse, he intended to, and would, use instruments " for the purpose of enlarging the parts," and that such operation with instruments would be likely to kill her.   And if the jury should so find,—with or without the other facts submitted to them by the charge given—and that she would not otherwise have yielded, it would be their duty to find the defendant guilty of the crime charged.

The judgment must be reversed, and a new trial awarded.

CAMPBELL, J., concurred.

COOLEY, J.

As my brethren are agreed in this case, I concur in the result, while not fully assenting to all that is expressed in the opinion.

GRAVES, J., did not sit in this case.