PEOPLE v McGILL

Docket No. 63207. Submitted October 4, 1983, at Detroit.—Decided
January 17, 1984.

Robert E. McGill was convicted of criminal sexual conduct in the
fourth degree following a jury trial in Monroe Circuit Court,
Daniel L. Sullivan, J. Defendant was then convicted as a second
offense habitual offender following a bench trial before Judge
Sullivan. At the criminal sexual conduct trial, evidence was
adduced that the defendant took the 13-year-old complainant to
a state park some distance from her home and, while alone
with the complainant, placed a hand on complainant's leg and
within her undergarments. While the defendant made these
undesired touchings on the pretext of getting a modeling job for
the complainant and removed his hand in each instance when
complainant objected to defendant's acts, the complainant was
frightened by the acts of the defendant because of the remote
and isolated location and her inability to seek the assistance of
anyone. Defendant appeals, arguing that the supplemental
information was not timely filed, that there was not sufficient
evidence to establish the element of force or coercion needed to
convict of fourth-degree criminal sexual conduct, that the ha-
bitual offender conviction must be reversed by reason of the
fact that the supplemental information incorrectly charged him
as a fourth offender, and that criminal sexual conduct, being
statutorily designated as a misdemeanor, may not be used to
support a conviction as a habitual offender. *Held:*

1. The filing of the supplemental information on the habitual
offender charge two days after the filing in circuit court of the
information for the criminal sexual conduct charge, which date
was also the date of the circuit court arraignment on that
charge, was a prompt filing of the supplemental charge. The
prosecution is not required to file the supplemental information

REFERENCES FOR POINTS IN HEADNOTES
[1] 39 Am Jur 2d, Habitual Criminals and Subsequent Offenders
§ 17.5.
[2, 3] 65 Am Jur 2d, Rape § 11.
[4] 39 Am Jur 2d, Habitual Criminals and Subsequent Offenders § 21.
[5] 39 Am Jur 2d, Habitual Criminals and Subsequent Offenders § 15.

simultaneously with the filing of the information for the felony giving rise to the habitual offender charge so long as the prosecution brings the supplemental charges promptly.

2. While the evidence adduced at trial was not sufficient to support any of the statutorily defined circumstances constituting force or coercion, the criminal sexual conduct statute specifically permits the finding of force or coercion under circumstances other than those set forth in the statute. Coercion may be found where the defendant's actions are sufficient to create a reasonable fear of dangerous consequences. The complainant's testimony as to her fear, coupled with the fact that the acts took place at a remote and isolated location and the fact that the complainant was of tender years, provided a sufficient basis upon which the jury could find the necessary element of coercion.

3. The error in charging defendant as a fourth offender rather than as a second offender does not mandate reversal in view of the fact that the evidence established and the trial court found that defendant was a second offender and that defendant was sentenced as a second offender. The defect could have been easily corrected if defendant had objected at trial, which he did not.

4. While fourth-degree criminal sexual conduct is designated in the Penal Code as a misdemeanor, it carries a maximum sentence of two years in prison. A crime punishable by more than one year in prison, for the purposes of the Code of Criminal Procedure, is treated as a felony. A conviction of fourth-degree criminal sexual conduct is a felony for the purposes of the habitual offender statutes.

Affirmed.

1. CRIMINAL LAW — HABITUAL OFFENDERS — FILING OF CHARGES.

The prosecution must proceed promptly in the filing of a supplemental information charging a defendant as a habitual offender; the Supreme Court has held that promptly means that the supplemental information shall be filed no more than 14 days after defendant's arraignment in circuit court on the underlying felony charge or the waiver of circuit court arraignment or by the first day of trial if the underlying felony proceeds to trial within the 14-day period after arraignment.

2. CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT — EVIDENCE — FORCE — COERCION.

A finding of force or coercion within the meaning of the statute defining criminal sexual conduct in the fourth degree is not

limited to those situations specifically delineated in the statute; the finding of the element of force or coercion may be based upon a showing that the defendant's actions were sufficient to create a reasonable fear of dangerous consequences (MCL 520b[1][f], 520e[1][a]; MSA 28.788[2][1][f], 28.788[5][1][a]).

3. CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT — EVIDENCE — COERCION.

Coercion within the meaning of the criminal sexual conduct statute is sufficiently shown where the proofs show that the defendant made undesired touchings of a young girl under circumstances where the victim could not easily leave or summon help, since under those circumstances the victim's fear of dangerous consequences was reasonable (MCL 520b[1][f], 520e[1][a]; MSA 28.788[2][1][f], 28.788[5][1][a]; CJI 20:5:3).

4. CRIMINAL LAW — INFORMATIONS — HABITUAL OFFENDERS.

Reversal of a conviction as a habitual offender on the basis that the information charged the defendant under the fourth offender statute while the defendant had only one prior felony conviction is not mandated where the proof showed and the trial court found only one prior felony conviction, defendant was sentenced under the second-offender statute, and defendant failed to object to the erroneous information in the trial court.

5. CRIMINAL LAW — SENTENCING — FOURTH-DEGREE CRIMINAL SEXUAL CONDUCT — HABITUAL OFFENDERS.

A crime carrying a two-year maximum sentence, even if such crime is statutorily designated as a misdemeanor for the purposes of the Penal Code, is treated as a felony for the purposes of the Code of Criminal Procedure; accordingly, a conviction for fourth-degree criminal sexual conduct is a felony for the purposes of the habitual offender statutes despite the express designation of fourth-degree criminal sexual conduct as a misdemeanor (MCL 750.520e, 761.1[g]; MSA 28.788[5], 28.843[g]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Michael W. LaBeau,* Prosecuting Attorney, and *William D. Bond,* Assistant Prosecuting Attorney, for the people.

*James A. Kandrevas,* for defendant on appeal.

Before: M. J. KELLY, P.J., and HOOD and SHEPHERD, JJ.

SHEPHERD, J. Defendant was convicted by a jury
of criminal sexual conduct in the fourth degree,
MCL 750.520e(1)(a); MSA 28.788(5)(1)(a). He then
received a bench trial on the supplemental infor-
mation charging him as a habitual offender, MCL
769.10; MSA 28.1082. Following his conviction on
that charge, defendant was sentenced on March 5,
1982, to a term of from 24 to 36 months imprison-
ment. He appeals as of right.

## FACTS

The complainant, a 13-year-old ninth-grader who
had twice cared for defendant's children prior to
July 18, 1981, testified at trial as follows.

Defendant's girlfriend came to her house and
asked her to babysit for defendant's children dur-
ing the evening of July 18, 1981. She and defen-
dant's girlfriend got into defendant's car. Defen-
dant told the complainant that they had to go to
his cousin's house to pick up the children, but
instead he drove to Sterling State Park. Once in
the parking lot at the park, defendant told his
girlfriend to look for the children. When she had
left, defendant told the complainant to get into the
front seat so he would not have to turn around to
talk to her.

After the complainant moved to the front seat,
defendant began talking to her about modeling. He
indicated to her that he was an agent of some sort
and that he would fly her in his private plane to a
one-hundred-thousand dollar home he had for her
in Arizona. He told her that he would take her to
Ann Arbor one weekend so his friend could take
pictures of her so that she could become a model.

The defendant then began touching her in vari-
ous places. Defendant twice put his hand on her

leg and each time he complied when complainant told him to remove it. Defendant then put his hand inside the complainant's underpants; when she told him to remove it, he told her he was checking to see if she had an appendectomy scar. He subsequently removed his hand upon her demand but began telling her how he had been in jail in Arizona. At that point, defendant put his hand up the back of her shirt. He then placed his hand on her breast underneath her underclothes. When the complainant told him to remove his hand, defendant did so; he then shook her hand and told her he was glad to be her agent.

The complainant testified that at this point she still thought that defendant was an agent of some type but that she was frightened. They were about 40 to 45 minutes from her home and she knew no one who lived in the Sterling State Park area. Defendant's girlfriend eventually returned to the car after about one-half hour. Defendant then drove the complainant home where he paid her three dollars and allowed her to go into her house.

Defendant testified at trial that he never touched the complainant.

On appeal, defendant raises four issues, none of which requires reversal.

I

Defendant first argues that the prosecutor failed to file the supplemental information in a timely manner and defendant's habitual offender conviction must therefore be vacated. Defendant's argument is patently meritless.

The original information charging defendant with criminal sexual conduct in the fourth degree was filed in the circuit court on September 16,

1981. The supplemental information was filed on September 18, 1981, two days later, and the day on which defendant was arraigned. We find a two-day delay between the filing of informations to fall within the requirements for prompt filing of a supplemental information. See *People v Fountain,* 407 Mich 96; 282 NW2d 168 (1979). Although *People v Shelton,* 412 Mich 565; 315 NW2d 537 (1982), which defines "promptly" to mean generally not more than 14 days after a defendant's arraignment in circuit court on the underlying felony, had not been decided at the time of defendant's arraignment or trial, we find its logic persuasive. At any rate, we do not believe that the prosecutor was required to file the supplemental information simultaneously with the information on the most recent felony. See *People v Martin,* 100 Mich App 447; 298 NW2d 900 (1980); *People v Mohead,* 98 Mich App 612; 295 NW2d 910 (1980). The two-day delay did not render the filing tardy.

## II

The second issue raised by defendant is somewhat more substantial. Defendant argues that no evidence was presented at trial to show that defendant used force or coercion to effectuate the sexual contact complained of here. Since force or coercion is an element of criminal sexual conduct in the fourth degree, defendant argues that his conviction must be reversed.

The trial court instructed the jury on the element of force or coercion as follows:

"Further, that the defendant used force, this is the third element, that the defendant used force or coercion to commit the sexual act. The term force or coercion— the term force or coercion means the use of actual

physical force by the defendant, or any actions sufficient to create a reasonable fear of dangerous consequences. It is sufficient force if the defendant overcame the complainant through actual application of physical force or physical violence. It is sufficient force if the defendant made the complainant submit by threatening to use force or violence on the complainant, and the complainant believed that the defendant had the present ability to carry out these threats."

That instruction is in accordance with CJI 20:5:3, which defines use of force or coercion as "the use of actual physical force by the defendant, or any actions sufficient to create a reasonable fear of dangerous consequences".

The statute governing criminal sexual conduct in the fourth degree reads in pertinent part:

"(1) A person is guilty of criminal sexual conduct in the fourth degree if he or she engages in sexual contact with another person and if either of the following circumstances exists:

"(a) Force or coercion is used to accomplish the sexual contact. Force or coercion includes but is not limited to any of the circumstances listed in section 520b(1)(f)(i) to (iv)." MCL 750.520e(1)(a); MSA 28.788(5)(1)(a).

Section 520b(1)(f), MCL 750.520b(1)(f); MSA 28.788(2)(1)(f), provides:

"(f) The actor causes personal injury to the victim and force or coercion is used to accomplish sexual penetration. Force or coercion includes *but is not limited to* any of the following circumstances:

"(i) When the actor overcomes the victim through the actual application of physical force or physical violence.

"(ii) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats.

"(iii) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat. As used in this subdivision, 'to retaliate' includes threats of physical punishment, kidnapping, or extortion.

"(iv) When the actor engages in the medical treatment or examination of the victim in a manner of for purposes which are medically recognized as unethical or unacceptable." (Emphasis supplied.)

It is clear that the facts in this case do not indicate force or coercion as specifically described in the circumstances listed in § 520b(1)(f), subds (i)-(iv). However, force or coercion is not specifically limited by statute to those examples. MCL 750.520e(1)(a). Therefore, if the facts in this case could reasonably be construed to indicate the presence of force or coercion, defendant's argument on this issue would lack merit.

We conclude that, on the facts of this case, defendant's actions were "sufficient to create a reasonable fear of dangerous consequences", CJI 20:5:3, and, in light of the totality of the circumstances, were such that they could have been found by the jury to constitute coercion.

Little case law exists in Michigan defining the terms "force" or "coercion" in the context presented here. The only case offered by defendant, *Moran v People,* 25 Mich 356 (1872), is distinguishable on both its facts and law. The defendant there was charged with having raped a 16-year-old girl who had been left with him by her father for treatment of consumption. The jury was charged that, if it found that defendant's representations were false and fraudulent, that the complaining witness believed them and therefore consented to the defendant's solicitations, and that she would

not otherwise have yielded, they should find defendant guilty of rape. On appeal, the Supreme Court reversed, noting that the jury instruction left out all idea of force as a necessary element of the crime charged. The jury was told, in effect, that the defendant might be found guilty of rape though he neither used nor threatened to use any force whatever in case of the complaining witness's refusal. The Court stated:

"If the statute, or the definition of rape, did not contain the words 'by force' or 'forcibly,' doubtless a consent procured by such fraud as that referred to, might be treated as no consent; but the idea of force can not thus be left out and ignored, nor can such fraud be allowed to supply its place, though it would doubtless supply, and satisfy, all other terms of the definition.

\* \* \*

"In fact, we think the terms of the statute in reference to force, are satisfied by any sexual intercourse to which the woman may have been induced to yield, only through the constraint produced by the fear of great bodily harm, or danger to life or limb, which the prisoner has, for the purpose of overcoming her will, caused her to apprehend as the consequence of her refusal, and without which she would not have yielded." *Moran, supra,* pp 364-366.

In the instant case, however, there was no consent or yielding to the touching by the complainant such as was induced by fraud in *Moran.* Further, the statute in question in the instant case does not require that there be actual force—it may also be satisfied by a finding of coercion or, according to the Criminal Jury Instructions and as intimated in *Moran,* even a finding of a reasonable fear of dangerous consequences. Finally, the specific means of making sexual contact in *Moran,* via

medical treatment, is now defined as force or coercion by statute. MCL 750.520b(1)(f)(iv); MSA 28.788(2)(1)(f)(iv).

In the instant case, while defendant did not use actual violence or verbally threaten the complainant with violence, we believe that there was sufficient evidence of coercion to enable the jury to convict defendant of criminal sexual conduct in the fourth degree. While we agree with defendant that his promises of a house, trips, and a modeling career came closer to being fraud or trickery than force or coercion, defendant did not stop with promises. He repeatedly and intimately touched the complainant despite her continued requests and orders to defendant to remove his hands from her. The complainant was only 13 years old. Defendant was an older and presumably stronger man. Defendant took the complainant to a state park far from her home. Complainant knew no one who lived nearby and testified that she was frightened. Given the totality of these circumstances, it could certainly be inferred that a coercive atmosphere existed and that defendant knew, or should have known, that his actions were coercive to a child.

Furthermore, given the above facts, the jury could have concluded that the complainant possessed a reasonable fear of dangerous consequences. As has been noted, the complainant testified that she was afraid. We believe her fear to have been reasonable given the vulnerable position of a young girl taken to an isolated and distant location by an older and stronger adult male.

We do not hold here that the type of actual conduct described in the instant case will always satisfy the "force or coercion" element. Were the

victim older or had the undesired touching occurred in a place from which the victim could
easily leave or from which she could summon help,
a fear of dangerous consequences might not be
deemed reasonable and an atmosphere of coercion
might not exist. Each case must be examined on
its own facts to determine whether force or coercion is indeed present. As the Court of Appeals of
Maryland said in *State v Rusk,* 289 Md 230, 246;
424 A2d 720 (1981):

"Just where persuasion ends and force begins in cases
like the present is essentially a factual issue, to be
resolved in light of the controlling legal precepts. That
threats of force need not be made in any particular
manner in order to put a person in fear of bodily harm
is well established. *Hazel [v State,* 221 Md 464; 157 A2d
922 (1960)]; *Dumer v State,* 64 Wis 2d 590; 219 NW2d
592 (1974). Indeed, conduct, rather than words, may
convey the threat. See *People v Benavidez,* 255 Cal App
2d 563; 63 Cal Rptr 357 (1967); *State v Douglas,* 256 La
572; 237 So 2d 382, *death sentence vacated* 408 US 937;
92 S Ct 2864; 33 L Ed 2d 756 (1970); *State v Bouldin,*
153 Mont 276; 456 P 2d 830 (1969); *Blotkamp v State,*
45 Md App 64; 411 A 2d 1068 (1980)."

Similarly, in discussing whether consent obtained through fear is a valid consent, it has been
said:

" 'Consent of the woman from fear of personal violence is void. Even though a man lays no hands on a
woman, yet if by an array of physical force he so
overpowers her mind that she dares not resist, or she
ceases resistance through fear of great harm, the consummation of unlawful intercourse by the man is rape.
The age of the prosecutrix is always important to be
considered in such cases.' " *State v Carter,* 265 NC 626,
630; 144 SE2d 826 (1965), quoting 44 Am Jur, Rape,
§ 13, p 910.

Citing *Carter, supra,* the Court of Appeals of North Carolina stated that "the age of the woman is an important consideration in determining what situations would reasonably induce submission due to fear or coercion". *State v Ricks,* 34 NC App 734, 735; 239 SE2d 602 (1977). While, like *Carter, Ricks* was a rape case and involved the question of whether consent had been obtained, we believe that the age of the victim is also an important consideration in determining which situations would inspire a reasonable fear of dangerous consequences or would be coercive to a particular victim. We therefore conclude that sufficient evidence existed from which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, *i.e.,* that force or coercion were present in the instant case.

### III

Defendant next argues that his habitual offender conviction must be reversed because the information charged him with having been convicted of three prior felonies, MCL 769.12; MSA 28.1084, when defendant had in fact only been convicted of one prior felony and the appropriate habitual offender statute would have been MCL 769.10; MSA 28.1082. The proofs at trial showed, and the trial court found, that defendant had had only one prior felony conviction. Defendant was sentenced appropriately, according to the sentencing terms of MCL 769.10(1)(a); MSA 28.1082(1)(a), and was given a sentence the maximum of which was 1-1/2 times the maximum term possible for the underlying felony. It is clear from the record that, although the statute was incorrectly cited in the information, defendant was convicted on the proper charge.

The mere erroneous citation of a staute in an information does not mandate reversal, particularly in the instant case. See *People v Hopper,* 274 Mich 418, 421; 264 NW 849 (1936); *People v Dayton,* 18 Mich App 313, 316; 171 NW2d 57 (1969). Furthermore, since defendant failed to object to the error at trial, there is no issue for review on appeal. *People v Hernandez,* 80 Mich App 465, 468; 264 NW2d 343 (1978), *lv den* 406 Mich 938 (1979); *People v Fuzi,* 46 Mich App 204, 209-210; 208 NW2d 47 (1973). The defect could easily have been cured at trial had a timely objection been made. *People v Willett,* 110 Mich App 337, 343; 313 NW2d 117 (1981); *People v Mahone,* 97 Mich App 192, 195; 293 NW2d 618 (1980).

## IV

Finally, defendant argues that fourth-degree criminal sexual conduct is not a felony for purposes of the habitual offender statute since it is designated a misdemeanor by its own terms. We disagree. Although the conduct punished in the statute is termed a misdemeanor, it is punishable by up to two years imprisonment. The Code of Criminal Procedure defines felony as:

"[A] violation of a penal law of this state for which the offender, upon conviction, may be punished by death or imprisonment for more than one year, or an offense expressly designated by law to be a felonly." MCL 761.1(g); MSA 28.843(g).

See *People v Rosecrants,* 88 Mich App 667; 278 NW2d 713 (1979), wherein it was held that resisting a police officer, a misdemeanor under the Penal Code, was a felony for the purposes of charging the defendant as a second felony of-

fender. See, also, *People v Reuther,* 107 Mich App 349; 309 NW2d 256 (1981); *People v Stiles,* 99 Mich App 116; 297 NW2d 631 (1980), *lv den* 410 Mich 891 (1981); *People v Davis,* 89 Mich App 588, 595-597; 280 NW2d 604 (1979). We conclude, therefore, that the offense of criminal sexual conduct in the fourth degree is a felony for the purposes of the habitual offender statutes despite its express designation as a misdemeanor.

CONCLUSION

Defendant has failed to convince this Court that there exists any error sufficient to justify the reversal of his conviction.

Affirmed.