## PEOPLE v PATTERSON

Docket No. 77724. Argued November 14, 1986 (Calendar No. 17). Decided August 7, 1987.

Robert E. Patterson was convicted by a jury in the Eaton Circuit Court, Hudson E. Deming, J., of fourth-degree criminal sexual conduct. The Court of Appeals, R. B. BURNS, P.J., and R. M. MAHER and DENEWETH, JJ., reversed in an unpublished opinion per curiam, holding that the evidence of the element of force and coercion presented at trial was insufficient to sustain his conviction (Docket No. 77656). The people appeal.

The defendant was charged with fourth-degree criminal sexual conduct under § 520e(1)(a) of the statute which requires the people to establish that force or coercion was used to accomplish the sexual contact, and not under subsection (1)(b) which requires the people to establish that the actor knew that the victim was physically helpless, which is defined in the statute as including a person who is asleep.

In an opinion by Justice ARCHER, joined by Justices LEVIN, BRICKLEY, and CAVANAGH, the Supreme Court *held:*

Sexual assaults accomplished by force or coercion were intended to be treated separately from assaults on physically or mentally handicapped victims. Force or coercion sufficient to support a conviction of fourth-degree criminal sexual conduct may involve circumstances in which: the victim is overcome by the application of actual physical force or violence; the victim is coerced by a threat of force or violence which the victim believes is within the ability of the defendant to execute; or the defendant coerces the victim by a threat of retaliation in the future, against the victim or another, and the victim believes the threat. In this case, the prosecution failed to sustain its burden of proving the element of force or coercion, and thus

REFERENCES

Am Jur 2d, Appeal and Error §§ 607, 608.

Am Jur 2d, Evidence §§ 1080 *et seq.*

Am Jur 2d, Rape §§ 4 *et seq.,* 53, 88 *et seq.,* 99, 116.

See the annotations in the Index to Annotations under Appeal and Error.

See the annotations in the Index to Annotations under Rape.

there was insufficient evidence to support a conviction under subsection (1)(a).

Although the claim of insufficient evidence was not raised at trial, it may be raised on appeal without the necessity of filing a motion for a new trial. A claim of insufficient evidence may be distinguished from a claim by a losing party addressed to and discretionary with the trial court that a result is against the great weight of the evidence.

In light of the evidence presented in this case, the proper remedy is reduction of the defendant's conviction to the lesser offense of simple battery and remand to the circuit court for entry of such a judgment and for resentencing.

Justice BRICKLEY, joined by Justice LEVIN, concurring, stated that the touching that occurred while the victim slept and that which occurred during the seconds after she was awakened should be distinguished. The testimony of the victim and other facts presented make clear that there was an unpermitted touching and that the victim was somewhat scared. However, there is no evidence that the fear resulted from the unpermitted touching, but, rather, from the presence of a stranger in her bedroom. The fear caused her to terminate the touching, not to acquiesce in it, and the defendant, upon the victim's awakening, took no action, forceful or otherwise, to continue it.

While the criminal sexual conduct statutes generally were intended to provide broad protection against unpermitted sexual penetration or contact, the defendant was not charged with a comprehensive violation of the statute, only with fourth-degree criminal sexual conduct involving force or coercion, and not a helpless victim. Merely because the decision of the Court leaves unprotected under narrow circumstances an unpermitted sexual touching does not provide a license to distort a clear, specific, and unambiguous criminal statute.

Affirmed.

Justice BOYLE, dissenting, stated that references in the fourth-degree criminal sexual conduct statute to conduct constituting force or coercion are illustrative only and are not intended to be read as limitations or as elements of the offense. The legislation was intended to provide broad protection against unpermitted sexual penetration or contact. The decision of the Court would require a victim to be physically helpless or to resist in order to sustain a conviction, squarely conflicting with the express legislative intent. To conclude that the conduct which occurred in this case is not included in the concept of physical force under the statute is to reintroduce the resistance requirement, when the proper focus ought to be on

whether the contact was permitted. The conduct prohibited is invasion of a person's sexual privacy by force, coercion, or other undue advantage, including not only the use of traditional force involving the overpowering of the victim, but also sexual touching accomplished involuntarily. So defined, "force" includes either contact which occurs while the victim is in fear or conduct which occurs before consent can be given or refused. Because the evidence also supports a conviction under § 520e(1)(a), and neither instructional error nor a variance between the pleadings and proofs was claimed, the decision of the Court of Appeals should be reversed and the judgment of the trial court reinstated.

Chief Justice RILEY concurred only in the result that Justice BOYLE would reach because the act of unpermitted sexual contact was nonconsensual and continued for a time after the victim awoke, there can be no question that the victim's fear was reasonable, and, thus, the unpermitted touching occurred and was accomplished while the victim was in reasonable fear of dangerous consequences.

Justice GRIFFIN took no part in the decision of this case.

1. APPEAL — INSUFFICIENT EVIDENCE TO SUPPORT VERDICT — NEW TRIAL.

A claim of insufficient evidence to support a verdict which was not raised at trial, may be raised on appeal without the necessity of filing a motion for a new trial.

2. RAPE — FOURTH-DEGREE CRIMINAL SEXUAL CONDUCT — FORCE OR COERCION.

Evidence of the touching of the genital area of a victim outside her clothing while she was asleep was insufficient to provide the element of force or coercion required to support a conviction of fourth-degree criminal sexual conduct where the defendant was charged only on the basis of using force or coercion to accomplish the criminal sexual conduct (MCL 750.520e[1][a]; MSA 28.788[5][1][a]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *G. Michael Hocking,* Prosecuting Attorney, and *K. Davison Hunter,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Susan J. Smith*) for the defendant.

ARCHER, J. There are two issues in this case. First, did the Court of Appeals err in considering the insufficiency of the evidence, when the issue was not raised in a motion for a new trial? Second, did the Court of Appeals err by finding there was insufficient evidence of force and coercion, an element of fourth-degree criminal sexual conduct?

We hold that where a claim of insufficient evidence to support a verdict is not raised before the trial judge, the claim may be raised on appeal without the necessity of filing a motion for a new trial. *Arnsteen v U S Equipment Co,* 390 Mich 776 (1973).

We agree with the Court of Appeals that there was insufficient evidence of the element of force and coercion as required under the fourth-degree criminal sexual conduct statute, MCL 750.520e(1)(a); MSA 28.788(5)(1)(a), and we modify the decision of the Court of Appeals.

I

The complainant is a seventeen-year-old high school student. She testified at trial that on July 9, 1983, she was home alone, since her mother was working the night shift. She went to bed around midnight and fell asleep shortly thereafter. She was awakened by the feel of a hand on her genital area, outside her underwear. She said she knew someone was in the room and woke up. She called out, "Who is it?" No one answered. She reached up and felt a face with scratchy hair and stubble on it. She then rolled over and turned on her light. In moving to turn on the light, she turned her whole body, and the hand was removed from her genital area.

She turned on her light and stared at the man squatting beside her bed. She said, "Who the hell

are you?" She said she was angry and a little scared. The man said, "Don't you remember me?" She replied, "No." She then told him to get out of her house. The man staggered and just stood there. The complainant said she repeated again, "Get out of my house." She reached for the phone. The man turned around and walked out of the room. She then called the police.

The complainant was shown photos to identify the person who was in her house. The second time she viewed the pictures, she identified the defendant. She also recalled having seen the man before because he had dated her mother.

The defendant, Robert Eddie Patterson, was charged with fourth-degree criminal sexual conduct.[1] He was charged and tried under subsection (1)(a) of the statute which provides that a person is guilty of criminal sexual conduct in the fourth degree if force or coercion is used to accomplish the sexual contact.

The fourth-degree criminal sexual conduct statute, MCL 750.520e; MSA 28.788(5), provided at the time:

> Sec. 520e. (1) A person is guilty of criminal sexual conduct in the fourth degree if he or she engages in sexual contact[2] with another person and if either of the following circumstances exists:

---

[1] The information charged that the defendant engaged in sexual contact with another person, using force or coercion to accomplish the sexual contact, contrary to MCL 750.520e(1)(a); MSA 28.788(5)(1)(a).

[2] MCL 750.520a(g); MSA 28.788(1)(g), now § 520a(k), provides:

> (g) "Sexual contact" includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification.

(a) Force or coercion is used to accomplish the sexual contact. Force or coercion includes but is not limited to any of the circumstances listed in section 520b(1)(f)(i) to (iv).

(b) The actor knows or has reason to know that the victim is mentally defective,[3] mentally incapacitated, or physically helpless.

(2) Criminal sexual conduct in the fourth degree is a misdemeanor punishable by imprisonment for not more than 2 years, or by a fine of not more than $500.00, or both.[4]

The circumstances that subsection (1)(a) refers to are listed in the first-degree criminal sexual conduct statute, MCL 750.520b(1)(f)(i)-(iv); MSA 28.788(2)(1)(f)(i)-(iv). The circumstances are:

(i) When the actor overcomes the victim through the actual application of physical force or physical violence.

(ii) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats.

(iii) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat. As used in this subdivision, "to retaliate" includes threats of physical punishment, kidnapping, or extortion.

(iv) When the actor engages in the medical treatment or examination of the victim in a manner or for purposes which are medically recognized as unethical or unacceptable.

---

[3] In 1983, subsection (1)(b) was amended to provide:

(b) The actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless. [1983 PA 158. The amendment took effect March 29, 1984.]

[4] 1974 PA 266.

Defendant Patterson testified and admitted he knew the complainant and her mother, but denied involvement in the incident. He testified that on July 9, he went to a party and then to a girl-friend's home.

At the close of all the proofs, defense counsel moved for a directed verdict on the ground that the prosecutor failed to present sufficient evidence to warrant sending the case to the jury. The court denied the motion, stating in pertinent part:

[The complainant] testified that the defendant touched her genital area, the clothing covering this area. . . .

This jury could find from what this young woman testified, that this touching could be reasonably construed as being for the purpose of sexual arousal or sexual gratification. This occurred at two-thirty in the morning. This young woman was sound asleep in her bed.

I am satisfied because of that that this jury could find that this touching could be reasonably construed as being for the purpose of sexual arousal or sexual gratification.

And, lastly, this jury could find that the defendant used force or coercion to commit the sexual act because that requires the use of actual physical force by the defendant or any action sufficient to create a reasonable fear of dangerous consequences.

This young woman was frightened. Not only was she frightened, she was angered. We heard what she said. She told this man to get out, as I remember. Again, it was at two-thirty in the morning. There were no lights on in this bedroom. This man placed his hand upon the clothing covering her genital area.

I am satisfied that, also, it appears that the doors were closed to this house. I'm satisfied that there was force used by—I'm satisfied this jury could find that force was used by this defendant.

With that in mind, your motion is denied.

* * *

I should add that I considered this age of this young woman being 17, also, her size in comparison with the size of the defendant in ruling on your motion.

In instructing the jury, the trial judge gave the standard criminal jury instructions.[5] Regarding the element of force or coercion the court stated:

The term "force or coercion" means the use of actual physical force by the defendant, or any action sufficient to create a reasonable fear of dangerous consequences.[6]

A jury convicted the defendant of criminal sexual conduct in the fourth degree, MCL 750.520e(1)(a); MSA 28.788(5)(1)(a). Following his conviction of that crime, defendant was sentenced on February 16, 1984, to nine months in the county jail and four years probation.[7]

The defendant appealed by right. In an unpublished per curiam opinion, the Court of Appeals reversed the defendant's conviction, holding that the evidence presented at trial was insufficient to sustain his conviction of the offense charged in the information. The Court of Appeals declined to remand the case for another trial.

The prosecutor sought leave to appeal, and we granted leave on April 22, 1986.

II

On appeal, the prosecutor argues that the defen-

---

[5] CJI 20:5:01, 20:5:03.

[6] CJI 20:5:03.

[7] The trial court sentenced the defendant to nine months in the county jail. He has already served his jail time. The trial court also imposed four years probation. The defendant would be discharged early from his probation.

dant's conviction of fourth-degree criminal sexual conduct should be reinstated because the element of "force or coercion" may be predicated on a finding that the defendant's actions created a reasonable fear of dangerous circumstances.[8] The prosecutor maintains that the Court of Appeals improperly restricted its legal analysis of the statute since subsection (1)(a) expressly states that the enumerated circumstances defining "force or coercion" are not exclusive.

The defendant argues that since the sexual contact in this case was accomplished when the complainant was asleep, the Court of Appeals correctly found that the prosecutor had not sustained his burden of proving that sexual contact had been accomplished by force or coercion.[9]

---

[8] At the outset it should be emphasized that the Legislature specifically included within the fourth-degree criminal sexual conduct statute a section which applies directly to the facts of this case.

Section 520e of the statute provides:

(1) A person is guilty of criminal sexual conduct in the fourth degree if he or she engages in sexual contact with another person and if either of the following circumstances exists:

\* \* \*

(b) The actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless.

The definition section of the criminal sexual conduct statute, MCL 750.520a(i); MSA 28.788(1)(i) contains the following definition:

"Physically helpless" means that a person is unconscious, *asleep,* or for any other reason is physically unable to communicate unwillingness to an act. [Emphasis added.]

Despite the fact that the fourth-degree criminal sexual conduct statute specifically includes sexual contact when the victim is asleep, the defendant was never charged with this section of the statute. No showing of force or coercion is even required to be proven under this section.

[9] The complainant was asleep when the defendant touched her genital area. The defendant removed his hand as the complainant

We must examine the statute and its legislative history to determine the Legislature's intent in providing that "[f]orce or coercion includes but is not limited to any of the circumstances listed in section 520b(1)(f)(i) to (iv)."

Senate Bill 1207 was introduced on February 28, 1974[10] to redefine sexual crimes. As introduced, the provision on fourth-degree criminal sexual conduct provided in relevant part:

> Sec. 520i. (1) A person is guilty of sexual assault in the fourth degree who subjects another person to sexual contact under any of the circumstances listed in Section 520c(1)(A) to 520c(1)(J).

Under the initial Senate bill, a person was guilty of fourth-degree criminal sexual conduct if there was sexual contact under any of the circumstances enumerated in § 520c of the bill, which was the first-degree criminal sexual conduct provision.[11] One of the circumstances contained in § 520c was 520c(1)(J) which provided:

woke up and moved over to turn on the light. There was no testimony that the defendant used force or coercion.

[10] 1974 Journal of the Senate 364.

[11] Section 520c(1)(A) to (J) provided:

> (A) When the actor overcomes the victim through the actual application of physical force, physical violence, or superior physical strength.
> (B) When the victim is physically helpless to resist.
> (C) When the actor coerces the victim to submit by threatening to use force, violence, or superior physical strength on the victim, and the victim believes that the actor has the present ability to execute these threats.
> (D) When the actor coerces the victim to submit by threatening to retaliate against the victim, or any other person, and the victim believes that the actor has the ability to execute these threats in the future. Retaliation, as used in this subdivision, includes threats of future physical or mental punishment, kidnapping, false imprisonment or forcible confinement, extortion, or public humiliation or disgrace.
> (E) When the victim submits under circumstances involving forcible confinement, kidnapping, or extortion.

When the actor, through concealment or by the element of surprise, is able to overcome the victim before he or she has a chance to adequately flee or resist.

The Senate Judiciary Committee reviewed the bill and reported it back to the Senate with amendments, recommending that the bill be passed.[12]

(F) When the actor, without the prior knowledge or consent of the victim, administers or has knowledge of someone else administering to the victim any narcotic, anesthetic, or other intoxicating substance which mentally incapacitates the victim.

(G) When the actor engages in the medical treatment or examination of the victim in a manner or for purposes which are not medically recognized as ethical or acceptable.

(H) When the victim is older than 12 but less than 16 years of age and the actor is a member of the same household as the victim, or is related by blood or affinity to the victim, or is in a position of authority over the victim and the actor used this authority to coerce the victim to submit.

(I) When the victim is mentally defective and the actor has reason to believe this or has actual knowledge of this fact.

(J) When the actor, through concealment or by the element of surprise, is able to overcome the victim before he or she has a chance to adequately flee or resist.

[12] The amended version of SB 1207 provided that fourth-degree criminal sexual conduct occurred when sexual contact with another person occurred under the following circumstances:

(i) When the actor overcomes the victim through the actual application of physical force, physical violence, or superior physical strength.

(ii) When the victim is physically helpless to resist.

(iii) When the actor coerces the victim to submit by threatening to use force, violence, or superior physical strength on the victim, and the victim believes that the actor has the present ability to execute these threats.

(iv) When the actor coerces the victim to submit by threatening to retaliate against the victim, or any other person, and the victim believes that the actor has the ability to execute these threats in the future. Retaliation, as used in this subdivision, includes but is not limited to threats of future physical or mental punishment, kidnapping, false imprisonment or forcible confinement, or extortion.

(v) When the victim submits under circumstances involving forcible confinement, kidnapping, extortion, robbery or any felony assault.

The bill and the amendments were referred to the Committee of the Whole. After additional amendments, the bill was passed and sent to the House of Representatives.[13]

The House substituted its own version of the bill.[14] After amendments, the House transmitted the bill back to the Senate. For the first time, the proposed fourth-degree criminal sexual conduct statute stated that a person was guilty of the offense if "[f]orce or coercion is used *to accomplish* the sexual contact." (Emphasis supplied.) The House version of the bill deleted six of the circumstances in the initial Senate version under which sexual contact would be a crime.

(vi) When the actor, without the prior knowledge or consent of the victim, administers or has knowledge of someone else administering to the victim any narcotic, anesthetic, alcoholic or other intoxicating substance which mentally incapacitates the victim.

(vii) When the actor engages in the medical treatment or examination of the victim in a manner or for purposes which are not medically recognized as ethical or acceptable.

(viii) When the victim is mentally defective and the actor has reason to believe this or has actual knowledge of this fact.

(ix) When the actor, through concealment or by the element of surprise, is able to overcome the victim before he or she has a chance to adequately flee or resist. [1974 Journal of the Senate 964-965.]

[13] 1974 Journal of the Senate 1112-1113.
[14] The initial House substitute provided:

Sec. 520e. (1) A person is guilty of criminal sexual conduct in the fourth degree if he or she engages in sexual contact with another person under any of the circumstances listed in Section 520b(1)(F)(i) to 520b(1)(F)(iv) or 520b(1)(G) except that the requirement of personal injury is not an element of this section.

Four of the circumstances listed in the initial House substitute were incorporated into the statute as enacted. The fifth circumstance was § 520b(1)(G):

(G) The actor causes personal injury to the victim under circumstances where the victim is mentally defective, mentally incapacitated, or physically helpless . . . .

Even after amendments, the House substitute bill provided that a person was guilty of fourth-degree criminal sexual conduct if under § 520b(1)(G):

> The actor causes personal injury to the victim and the actor knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless.[15]

Deleted from the fourth-degree criminal sexual conduct statute was § 520b(1)(F)(v) which provided that a person could be found guilty under the statute if there was sexual contact and

> (v) [w]hen the actor, through concealment or by the element of surprise, is able to overcome the victim.

The fourth-degree criminal sexual conduct statute was part of 1974 PA 266 and was approved by the Governor on August 12, 1974.[16]

III

The first issue is whether the Court of Appeals erred by considering the insufficiency of the evidence since the issue was not raised at trial or raised in a motion for new trial. We find no error.

> A claim that there is insufficient evidence to support a verdict or decision is not addressed to the discretion of the trial judge and may be raised on appeal without a motion for a new trial. [*Arnsteen v U S Equipment Co, supra,* p 777.]

Thus this issue may be distinguished from one

---

[15] 1974 PA 266. The personal injury element was deleted from the fourth-degree criminal sexual conduct statute.

[16] 1974 Journal of the Senate 1626.

where a losing party claims that a verdict of a
jury or a decision of a judge is against the great
weight of the evidence. "Such a motion is ad-
dressed to the discretion of the trial judge and,
accordingly, if such a motion is not filed, such a
claim is not preserved for appellate review." *Arn-
steen, supra.*

In order to be convicted of fourth-degree crimi-
nal sexual conduct as charged in the information
(see n 8), the actor[17] must have intentionally
touched the complainant's genital area, or the
clothing covering that area; second, the touching
must have been done with the intent and for the
purpose of sexual arousal or sexual gratification;
and, third, force or coercion must have been used
to accomplish the sexual contact.

The prosecutor argues that the Court of Appeals
interpretation of the fourth-degree criminal sexual
conduct statute completely ignored the defendant's
sexual imposition and assaultive conduct and erro-
neously focused on the complainant's physical sta-
tus. In addition, the defendant was absolved of his
criminal assaultive behavior, and the result failed
to fulfill the statute's policy goals.

Defendant argues that the trial judge erred in
denying his motion for a directed verdict because
the judge ignored the crucial fact that the contact
was not accomplished by frightening the complain-
ant, but rather that the contact woke her up, she
moved, the contact ended, and she was frightened
and angry that the defendant was in her room.
There was no physical force or threats of physical
force to make the complainant submit, the defen-
dant maintains. Also, defendant states there were
no threats to retaliate, nor were the defendant's

---

[17] "Actor" is defined as "a person accused of criminal sexual con-
duct." MCL 750.520a(a); MSA 28.788(1)(a).

actions such that they put the complainant in fear of the consequences.

The Court of Appeals stated:

> None of the circumstances listed in MCL 750.520b(1)(f)(i)-(iv); MSA 28.788(2)(1)(f)(i)-(iv) [was] present here. Even when those circumstances are not present, force or coercion may be found where the defendant's actions were sufficient to create a reasonable fear of dangerous consequences. *People v McGill,* 131 Mich App 465, 472; 346 NW2d 572 (1984). The victim here undoubtably had a reasonable fear of dangerous consequences when she awoke to find a strange man in her bedroom. The sexual contact, however, was already accomplished by the time the victim awakened. Nothing which occurred after the victim awakened can be said to have been "used to accomplish the sexual contact." Nothing which occurred before the victim awakened can be characterized as "force or coercion."

The Legislature's exclusion from the applicable definition of "force or coercion" of circumstances in which "the actor, through concealment or by the element of surprise, is able to overcome the victim" demonstrates an intent not to punish conduct like that of defendant here under this definition of fourth-degree criminal sexual conduct. The evidence here would sustain defendant's conviction under an alternate definition of fourth-degree criminal sexual conduct. MCL 750.520e(1)(b); MSA 28.788(5)(1)(b) provides:

"A person is guilty of criminal sexual conduct in the fourth degree if he or she engages in sexual contact with another person and if either of the following circumstances exists:

* * *

"(b) The actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or *physically helpless."* [Emphasis added.]

MCL 750.520a(i); MSA 28.788(1)(i) contains the following definition:

" 'Physically helpless' means that a person is unconscious, *asleep,* or for any other reason is physically unable to communicate unwillingness to [an] act."

The prosecutor, however, failed to charge defendant with a violation of MCL 750.520e(1)(b); MSA 28.788(5)(1)(b) or to pursue such a theory at trial, although he could have pursued both such a theory and his "force or coercion" theory in the alternative.

The prosecutor argues that this Court should adopt the interpretation of force or coercion set forth in *People v McGill, supra.* In *McGill,* the defendant was convicted by a jury of fourth-degree criminal sexual conduct. The complainant was a thirteen-year-old ninth grader who previously baby-sat for the defendant's children. The defendant and his girlfriend picked up the complainant to baby-sit, but then drove the complainant to Sterling State Park, forty to forty-five minutes from the complainant's house. After the defendant's girlfriend left the car, the defendant began talking to the complainant about modeling, indicating he was an agent of some sort. He promised the complainant a house, trips, and a modeling career. The defendant then touched the complainant on her leg, back, breast, and inside her underpants. The complainant continually requested and ordered the defendant to remove his hands from her. The complainant testified that after the touchings, she still thought defendant was an agent of some type, but that she was frightened. She knew no one who lived in the Sterling State Park area.

The defendant's girlfriend eventually returned to the car after about one-half hour. Defendant then drove the complainant home where he paid her three dollars and allowed her to go into her

house. The defendant testified at trial that he never touched the complainant.

On appeal, the defendant argued that no evidence was presented at trial to show that defendant used force or coercion to effectuate the sexual contact. Since force or coercion is an element of fourth-degree criminal sexual conduct, defendant argued that his conviction must be reversed.

Little case law exists in Michigan defining the terms "force" or "coercion" in the context presented, the *McGill* Court noted. After discussing and distinguishing the only case cited by the defendant, *Moran v People,* 25 Mich 356 (1872), the Court in *McGill,* p 473, stated:

> [T]he statute in question in the instant case does not require that there be actual force—it may also be satisfied by a finding of coercion or, according to the Criminal Jury Instructions and as intimated in *Moran,* even a finding of a reasonable fear of dangerous consequences.

The Court noted that the complainant was only thirteen years old. Defendant was an older and presumably stronger man. Defendant took the complainant to a state park far from her home. Complainant knew no one who lived nearby and testified that she was frightened. "Given the totality of these circumstances, it could certainly be inferred that a coercive atmosphere existed and that defendant knew, or should have known, that his actions were coercive to a child," the Court stated. *Id.,* p 474.

The *McGill* Court affirmed the conviction:

> We conclude that, on the facts of this case, defendant's actions were "sufficient to create a reasonable fear of dangerous consequences," CJI 20:5:03, and, in light of the totality of the circum-

stances, were such that they could have been found by the jury to constitute coercion. [*Id.,* p 472.]

However, the Court in *McGill* added:

We do not hold here that the type of actual conduct described in the instant case will always satisfy the "force or coercion" element. Were the victim older or had the undesired touching occurred in a place from which the victim could easily leave or from which she could summon help, a fear of dangerous consequences might not be deemed reasonable and an atmosphere of coercion might not exist. Each case must be examined on its own facts to determine whether force or coercion is indeed present. [*Id.,* pp 474-475.]

The defendant argues that the actions in this case are distinguishable from those in *McGill.* In this case, there was no physical overpowering, the complainant was asleep and therefore unaware of the actions which enabled the defendant to touch her, and there was no submission.

The prosecutor maintains that in other jurisdictions, the trend is to make the definition of force or coercion more comprehensive. Minnesota is the only state which has passed a criminal sexual conduct statute similar to Michigan's, and three Minnesota cases have interpreted the concept of force under that statute. The prosecutor urges this Court to adopt the rationale of these cases.

In *In re Welfare of DLK,* 381 NW2d 435 (Minn, 1986), the Minnesota Supreme Court reversed a decision of the Court of Appeals, 362 NW2d 13 (Minn App, 1985). In that case, D.L.K., a fourteen-year-old juvenile, came up behind a female classmate at school, tapped her on the shoulder, and when she turned around, grabbed and pinched her

breast hard enough to cause pain. The trial court held this conduct constituted fourth-degree criminal sexual conduct in violation of Minn Stat Ann, § 609.345(c) and by reason of this violation adjudicated D.L.K. a delinquent.

Minn Stat Ann, § 609.345 defines criminal sexual conduct in the fourth degree as follows:

> A person who engages in sexual contact with another person is guilty of criminal sexual conduct in the fourth degree if any of the following circumstances exists: . . . (c) the actor *uses force or coercion to accomplish the sexual contact* . . . . [Emphasis supplied.]

Force is defined in § 609.341, subd 3:

> "Force" means the infliction, attempted infliction, or threatened infliction by the actor of bodily harm or commission or threat of any other crime by the actor against the complainant or another, which (a) causes the complainant to reasonably believe that the actor has the present ability to execute the threat and (b) if the actor does not have a significant relationship to the complainant, also causes the complainant to submit.

After reviewing its legislative history, the Minnesota Supreme Court concluded that its legislature intended to retain the concepts of assault and duress in the definition of force, despite amendments in the definition. The court stated:

> We hold the evidence in this case of D.L.K.'s sudden and painful grabbing and pinching of the victim's breast is sufficient use of force to accomplish sexual contact to sustain the trial court's conclusion that D.L.K.'s conduct constitutes criminal conduct in the fourth degree . . . . [*Id.*, p 438.]

Defendant argues that the Minnesota court fo-

cused on the infliction of pain in finding sufficient evidence of force. To the contrary, in this case, the defendant argues there was no infliction of pain or a threat to inflict pain. Even under Minnesota's interpretation, the defendant maintains that his conduct would not have constituted the requisite force or coercion. There is also no policy determination to be made in this case, since the conduct at issue is already clearly included in subsection (1)(b) of the fourth-degree criminal sexual conduct statute.

The defendant urges this Court to adopt the approach used in *People v Kusumoto,* 169 Cal App 3d 487; 215 Cal Rptr 347 (1985). In that case, a thirteen-year-old was sleeping on the couch one afternoon, and she awoke to find the defendant Kusumoto's hand in her shorts and his finger in her vagina. She reviled him and went into her room. A couple of weeks later the complainant was sleeping on the couch late at night, and she again awoke to find the defendant's hand in her shorts and his finger in her vagina. She went to her room and closed the door. The defendant was convicted under several different counts, but appealed two convictions of rape by object under California Penal Code, § 289(a). He argued that the charges against him should have been dismissed because there was insufficient evidence of "force." Although the evidence was sufficient to demonstrate that he took advantage of the complainant's being asleep, the defendant argued that because he did not physically subdue the complainant, the insertion of his finger into her vagina was not "by means of force" as required by statute.

The California Penal Code, § 289(a) provided:

Every person who causes the penetration, however slight, of the genital or anal openings of

another person for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device *when the act is accomplished* against the victim's will *by means of force,* violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person or where the act is accomplished against the victim's will by threatening to retaliate in the future against the victim or any other person, and there is a reasonable possibility that the perpetrator will execute the threat, shall be punished by imprisonment in the state prison for three, six, or eight years. [Emphasis added.]

The rape-by-object statute in California had no provision applying specifically to a sleeping victim. Subdivision (b) of § 289 defined a form of object rape where the victim was unable to consent:

Every person who causes the penetration, however slight, of the genital or anal openings of another person for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device and the victim is at the time incapable, through lunacy or other unsoundness of mind, whether temporary or permanent, of giving legal consent, and this is known or reasonably should be known to the person committing the act for the purpose of sexual arousal, gratification, or abuse, shall be punished by imprisonment in the state prison, or in a county jail for a period of not more than one year.

After reviewing the sexual assault statutes and the legislative history, the court in *Kusumoto* stated:

We are thus faced with a situation in which, as to the three general sexual assault crimes other than rape-by-object, the Legislature has enacted a specific subdivision to deal with the performance of prohibited acts on a sleeping or otherwise un-

conscious victim. As to those statutes, we can
conclude that the Legislature did not intend the
performance of acts on a sleeping victim to be
found to be by means of *force* as that term appears
in other subdivisions of those same statutes. [*Id.,* p
492.]

The *Kusumoto* court observed:

Were we interpreting a common law crime in
the present case, we would have no trouble con-
cluding that the essential element of rape and
other sexual assaults is the lack of consent and
that the concept of force "plays merely a support-
ing evidentiary role." We deal here, however, with
a statute passed by the Legislature which requires
that the act be accomplished "against the victim's
will by means of force . . . ." An interpretation of
the statute which would require "force" only as
evidentiary proof of the lack of consent would
effectively render the "by means of force" clause
superfluous. As one commentator explained in the
context of analyzing rape statutes in general: "The
act    of    sexual    intercourse    must    be
accomplished . . . without    [the    victim's]
consent. . . .

"Conceptually, 'lack of consent' results either
from the defendant's use of force or threatened
force, or from the female's incapacity to
consent. . . .

"If the defendant uses force or threatened force
to accomplish the act of sexual intercourse, there
is no consent. *The force to which reference is made
is not the force inherent in the act of penetration
but the force used or threatened to overcome or
prevent resistance by the female."* 3 Wharton,
Criminal Law (14th ed. 1980) §§ 287-288, pp 30-34,
fns omitted. [*Id.,* p 493.]

The court concluded:

In the final analysis we have no question here

that the defendant perpetrated an act to which the victim did not consent. But given the entire statutory scheme, the requirement of "force" in section 289(a) simply cannot be stretched to encompass the type of conduct involved in this case, where the victim was penetrated while asleep and where the victim's will was not overcome by any physical force substantially different from or greater than that necessary to accomplish the act itself. [*Id.*, p 494.]

Thus the court reversed Kusumoto's conviction, concluding that the evidence was insufficient to demonstrate that the defendant committed the offense of object rape "by means of force" as the crime is defined in § 289(a). *Id.*, p 494.

Defendant Patterson argues that this case is far easier than *Kusumoto* because our Legislature has clearly addressed the problem of the sleeping victim in the fourth-degree criminal sexual conduct statute.

IV

We must now review the question whether there was sufficient evidence of "force or coercion" in this case to support the defendant's fourth-degree criminal sexual conduct conviction.

The standard for reviewing sufficiency of the evidence questions was set forth in *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979), reh den 407 Mich 1164 (1980), cert den 449 US 885 (1980):

In summary, the trial judge when ruling on a motion for a directed verdict of acquittal must consider the evidence presented by the prosecution up to the time the motion is made [*People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976)], view that evidence in a light most favorable to the

prosecution, *People v Vail,* 393 Mich 460, 463; 227 NW2d 535 (1975), and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt, *Jackson* [*v Virginia,* 443 US 307, 319; 99 S Ct 2781; 61 L Ed 2d 560 (1979)]. [*Hampton, supra,* p 368.]

In addition, the Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."[18]

After reviewing the evidence in the light of the *Hampton* standard, we agree with the Court of Appeals that there was insufficient evidence of the element of force and coercion as required under the fourth-degree criminal sexual conduct statute, MCL 750.520e(1)(a); MSA 28.788(5)(1)(a). We recognize that some may view this as an illogical result, and we share Justice BOYLE's misgivings. The legislative intent underlying subsection (1)(a) of the fourth-degree criminal sexual conduct statute is obscure, however. The Legislature specifically required force or coercion to convict a defendant of fourth-degree criminal sexual conduct where the defendant is charged as this defendant was charged in the information. If the Legislature had wanted to make all unconsented-to sexual contact punishable, with or without force, it should have said so. It may yet do so.

Upon reviewing the legislative history of the fourth-degree criminal sexual conduct statute, we are convinced that the Legislature did not intend the defendant's conduct to come within the definition of force or coercion in subsection (1)(a) of the

[18] *In re Winship,* 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970).

fourth-degree criminal sexual conduct statute. While it is true, as the prosecutor argues, that the Legislature's definition of "force or coercion" is not exclusive, we decline to expand the definition of force or coercion to include the defendant's conduct in this case. The "included but not limited to" language with direct reference to § 520b(1)(f)(i)-(iv) are all examples where the victim would be awake.

We intimate no opinion regarding the correctness of the analysis or decision in *McGill, supra,* but this case is distinguishable from *McGill.* The defendant told the complainant that she would be baby-sitting, but instead the defendant drove the complainant to a state park forty to forty-five minutes away. The complainant knew no one in that area. The defendant then repeatedly and intimately touched the complainant, despite her continued requests and orders telling the defendant to remove his hands from her. In this case, the defendant had accomplished the unconsented-to touching before the complainant woke up. The complainant reached over to turn on the light and the hand left her body.

The Legislature specifically provided under subsection (1)(b) that sexual contact with a person who is physically helpless, i.e., asleep, is a crime.[19] When the House substituted its own bill for the criminal sexual conduct act, it added to the fourth-degree criminal sexual conduct section the requirement that "[f]orce or coercion [be] used to accomplish the sexual contact." In addition, the House defined force or coercion more narrowly than did the Senate in the originally proposed Senate Bill 1207. Therefore, the Legislature intended to treat sexual assaults accomplished by force or coercion

[19] See *ante,* p 516.

separately from assaults on physically or mentally incapacitated victims.

Our holding is supported by the rules of statutory construction. Criminal statutes must be strictly construed. *Bell v United States,* 349 US 81; 75 S Ct 620; 99 L Ed 905 (1955); *People v Johnson,* 406 Mich 320; 279 NW2d 534 (1979). If this Court were to interpret defendant's conduct in this case to be included within the provisions of subsection (1)(a) of the fourth-degree criminal sexual conduct statute, this would render the language of subsection (1)(b) of the statute a nullity. "However inclusive may be the general language of the statute, it will not be held to apply or prevail over matters specifically dealt with in another part of the same enactment." *In re Brown,* 329 F Supp 422, 425 (SD Iowa, 1971).

Nor can defendant's conduct come within the fifth definition of force or coercion.

> When the actor, through concealment or by the element of surprise, is able to overcome the victim.[20]

Although this definition exists in criminal sexual conduct of the first, second, and third degrees, this definition was specifically eliminated from fourth-degree criminal sexual conduct.

> "To discover the true construction of any particular clause of a statute, the first thing to be attended to, no doubt, is the actual language of the clause itself, as introduced by the preamble; second, the words or expressions which obviously are by design omitted; third, the connection of the clause with other clauses in the same statute, and the conclusions which on comparison with other

---

[20] MCL 750.520b(1)(f)(v); MSA 28.788(2)(1)(f)(v).

clauses, may reasonably and obviously be drawn."[21]

Therefore, since the prosecution failed to prove the element of force or coercion as required under the fourth-degree criminal sexual conduct statute, we agree with the Court of Appeals that there was insufficient evidence of the element of force and coercion as required under MCL 750.520e(1)(a); MSA 28.788(5)(1)(a).

V

The Court of Appeals reversed the defendant's conviction. We believe instead that the proper remedy is to reduce this conviction to the lesser offense of simple battery. MCL 750.81; MSA 28.276. Accordingly, we remand this case to the circuit court for entry of such a judgment and for resentencing.

LEVIN, BRICKLEY, and CAVANAGH, JJ., concurred with ARCHER, J.

BRICKLEY, J. (*concurring*). I concur in the opinion of Justice ARCHER, but write separately to add further analysis in response to Justice BOYLE's dissent.

I think my sister is correct in distinguishing between the touching that occurred while the victim slept and that which occurred for what only could have been a matter of seconds after she was awakened. Justice BOYLE asserts that it "is apparent from the comprehensive scheme of the legislation, the Legislature intended to provide broad protection against unpermitted sexual penetration or contact."

---

[21] 2A Sands, Sutherland Statutory Construction (4th ed), § 46.05, p 90.

While this expression of general intent is certainly a safe expression, it is also true that defendant was not charged with a comprehensive violation of the statute, only MCL 750.520e(1)(a); MSA 28.788(5)(1)(a).

As to the touching that occurred while the victim was asleep, the majority sets forth the fact that MCL 750.520e(1)(a); MSA 28.788(5)(1)(a) unlike MCL 750.520e(1)(b); MSA 28.788(5)(1)(b) did not contain a "physically helpless" category which is further defined as "asleep," and that in the definition of force and violence "surprise and concealment" were eliminated from CSC IV as opposed to the other degrees of CSC which include these terms.

To sweep away these clear indications of legislative intent not to include a sleeping victim and to conclude that force or coercion, in the literal sense, over a conscious victim under subsection (1)(a) of CSC IV is not required, the dissent superimposes the above-mentioned presumed general intent of the Legislature, coupled with the fact that the definitions of force and coercion under the statute "are not limited to" that section's enumerated definitions. However, to allow the noninclusiveness of the definition and examples of "force and coercion" to permit those words to include any "unpermitted touching" is, in my view, to render them, in the words of the majority, a "nullity." Naturally, force and coercion can take many forms, and limiting those words to several examples would defeat the meaning of force and coercion just as much as it defeats them to suggest that they include nonforceful or noncoercive touching, except, of course, where specifically set forth as in subsection (1)(f) of CSC IV. This subsection defines unethical medical treatment as force and coercion and is cited by the dissent as evi-

dence that force and coercion in the statute does not mean force and coercion. Interestingly, such medical treatment is not only not forceful or coercive, but also is not unpermitted or unconsented to. The dissent's rationale on this point would therefore argue against a standard of unpermitted touching or, for that matter, against any significant or coherent meaning of the words force or coercion.

I do agree with the dissent that "accomplished" is not synonymous with "initiate," and that therefore the touching that continued after the victim's awakening deserves a separate analysis. For purposes of this analysis the precise testimony dealing with these few moments becomes important.

*Q.* After you woke up, what's the very first thing that you did?
*A.* I said, "Who's there?"
*Q.* Do you remember your exact words?
*A.* "Who is it?"
*Q.* Do you remember how you said it?
*A.* I said it in a sleepy state.
*Q.* A sleepy state?
*A.* Yes.
*Q.* Could you feel that hand at that time?
*A.* Yes.
*Q.* When you woke up, was everything else in your bedroom the same—I mean lights off, air conditioner on?
*A.* Yes.
*Q.* Did anybody answer you when you said, "Who's there?"
*A.* No.
*Q.* So what did you do after you said, "Who's there?"
*A.* I reached up and tried to see if I was imagining it, and I touched a face. So, then, I rolled over and turned on my light. And it was someone I didn't know.

*Q.* You thought maybe you were dreaming or something at first?

*A.* Yes.

*Q.* When you touched the face, did you notice anything?

*A.* Scratchy hair.

*Q.* Beard? Stubble?

*A.* Stubble.

*Q.* The movement that was required to turn on the light, did that require that you move your body or simply your arm?

*A.* My whole body.

*Q.* When you did that, did the hand then leave your pubic area?

*A.* Yes.

*Q.* And did you turn on the light?

*A.* Yes.

*Q.* What happened when you turned on the light?

*A.* I looked over and I stared at the person. And I said, "Who the hell are you?"

*Q.* Did you say it like you just said it to me?

*A.* No.

*Q.* Could you give us an indication of how you said it? I don't want to embarrass you but if possible.

*A.* I said, "Who the hell are you?"

*Q.* Now, were you laughing when you did that?

*A.* No.

*Q.* What was your emotion at that time? Were you scared?

*A.* Anger, a little scared.

It is clear to me from this testimony and the other facts of the case that there was an unpermitted touching and that the victim was certainly, at the least, "a little scared." However, there is no evidence that the fear resulted from the unpermitted touching, but rather from presence of a stranger in the victim's private bedroom. It seems

inescapable to me that the touching of the victim was initially accomplished because she was asleep and that upon her awakening it continued only long enough for her to discontinue it. If the victim had taken no further action because of the circumstances she found herself in, a finding of force and coercion based on a justified fear certainly would have been in order. Here, however, if anything, the fear caused her to terminate the touching, not to acquiesce in it. The defendant, upon the victim's awakening, took no action and expended no energy, forceful or otherwise, and the touching lasted only as long as it took the victim to move away from the defendant.

Finally, I agree with Justice BOYLE that resistance is not required, but I do not read the majority as so stating. References to no physical overpowering or no resistance are, like the presence of fear, only examples of circumstances that will aid in determining whether the act was accomplished by force or coercion. Of course, in this case there was immediate resistance, the victim's movement towards the light and away from the defendant, which terminated the touching.

The fact that the result of the majority opinion leaves unprotected, under some narrow circumstances, an unpermitted and unconsented to sexual touching[1]—a result that may or may not have been intended and that we may or may not agree with—does not license us to distort a clear, specific, and unambiguous criminal statute.

LEVIN, J., concurred with BRICKLEY, J.

---

[1] Such an unpermitted, but unprotected, touching would seem to occur when it is unaided or unabetted and accomplished by surprise or concealment. If the actor is abetted or aided by one or more persons it would be prohibited under MCL 750.520c(1)(d); MSA 28.788(3)(1)(d). Touching a sleeping victim would, of course, be prohibited under MCL 750.520e(1)(b); MSA 28.788(5)(1)(b), which, regretfully, the prosecutor did not employ in this prosecution.

BOYLE, J. (*dissenting*). Contrary to the express intent of the Legislature, the Court of Appeals in this case limited the definition of force under MCL 750.520e(1)(a); MSA 28.788(5)(1)(a) to the enumerated examples in the statute. Not only does the majority compound this clear error by agreeing with the Court of Appeals, it engages in further error by ignoring the fact that the sexual contact in this case continued after the complainant awoke. In light of the fact that it is so clear on this record that there was an unpermitted sexual touching, I find it particularly inappropriate that the Court would seize upon this fact situation to create a judicial exception to fourth-degree criminal sexual conduct.

I

The trial court instructed the jury that "[t]he term 'force or coercion' means the use of actual physical force by the defendant, or any action sufficient to create a reasonable fear of dangerous consequences." CJI 20:5:03. The defendant did not object at trial. Neither the majority opinion, the concurrence, nor the defendant claims that the instruction is an erroneous statement of the law.

In the case at bar, the seventeen-year-old complainant woke up in the middle of the night when she thought she was alone and felt a hand over her genital area under her nightdress. She reached up and felt the stubble of a beard and scratchy hair. On the basis of this evidence, the jury found force or coercion as defined under the instruction.

Defendant argues that in order to satisfy the elements of the crime as charged, force or coercion must be used to "*accomplish*" sexual contact. There is, of course, nothing in the statutory language to support a conclusion that the contact

must have been originated or begun through fear of dangerous consequences. To do so would be to suggest in an analogous context that a person who woke up to see a stranger holding a gun at his head would not have been feloniously assaulted because the gun was initially pointed while he was asleep.

As summarized by the majority opinion, "[i]n this case, there was no physical overpowering, the complainant was asleep and therefore unaware of the actions which enabled the defendant to touch her, and there was no submission." *Ante,,* p 519. It is apparent, however, that the touching continued after the complainant regained consciousness and did not cease until after she had spoken to her assailant, touched his face, and then turned to the lamp at the side of her bed. The complainant obviously did not consent to this touching. Submission was secured through the totality of the circumstances. It is obvious that the complainant was aware of the sexual contact as it was "effect[ed]," "execut[ed]," or "[brought] to a successful conclusion," see *Random House College Dictionary: Revised Edition,* p 9 (definition of accomplish). Since the Court of Appeals found that the victim undoubtedly had a reasonable fear of dangerous consequences upon finding a strange man in her bedroom, and since the contact continued after she awoke, the evidence supported the verdict. The record shows an act of sexual contact which occurred while the victim was in fear.

Alternatively, I cannot find any basis in the legislation or in the record for the conclusion of the concurrence that because the victim terminated the contact on awakening, there was an insufficient basis for conviction. As the language of the concurrence illustrates, this approach leads to the conclusion that fear must cause the victim "to

acquiesce in" the touching in order to find force or coercion. The Legislature has specifically given this Court the authority to create its own definition of force. MCL 750.520b(1)(f), 750.520c(1)(f), 750.520d(1)(b), 750.520e(1)(a); MSA 28.788(2)(1)(f), 28.788(3)(1)(f), 28.788(4)(1)(b), 28.788(5)(1)(a). This is neither a situation of a truly physically helpless victim nor of a victim terrorized into further submission. Rather, this is a situation in which the victim is conscious of a sudden affirmative act which occurs before consent can be given or refused. Whatever the legislative intent in deleting surprise or concealment, "physical force," as distinguished from physical violence, is broad enough to support inclusion of a sexual contact which is not consented to, and which is terminated either before the victim can react or simultaneously with the victim's reaction.

II

Having construed the word "accomplish" as if it meant "originate" or "begin," the majority opinion concludes that the Legislature did not intend to criminalize this type of conduct as fourth-degree criminal sexual conduct. Reliance is placed on the fact that the House of Representatives deleted from the definition of fourth-degree criminal sexual conduct the concealment or surprise wording contained in the first-, second-, and third-degree illustrations of force or coercion. Reliance on this historical fact is inappropriate for several reasons. First, the act clearly and repeatedly states that "[f]orce or coercion includes but is not limited to" the circumstances then set forth. This language itself indicates that the circumstances are illustrative and are not intended to be read as limitations or as elements of the offense.

Second, as is apparent from the comprehensive scheme of the legislation, the Legislature intended to provide broad protection against unpermitted sexual penetration or contact. The majority opinion would hold that, in order to sustain a conviction of criminal sexual conduct in the fourth degree, the victim must be physically helpless or there must be evidence of resistance. Such a holding squarely conflicts with the express legislative intent that a victim need not resist the actor in prosecutions under the act. MCL 750.520i; MSA 28.788(9).

Further, that such a result was *not* intended by the Legislature is indicated by the following example of force referenced under the statute: "When the actor engages in the medical treatment or examination of the victim in a manner or for purposes which are medically recognized as unethical or unacceptable." MCL 750.520b(1)(f)(iv); MSA 28.788(2)(1)(f)(iv). Clearly, this example requires neither a condition of physical helplessness nor resistance to the actor's conduct.

To conclude that physical force does not include the conduct which occurred here reintroduces the resistance requirement, when the proper focus ought to be on whether the contact was unpermitted. Most importantly, it is inconceivable to me that the Legislature intended to treat this situation as an assault and battery.[1]

---

[1] Prior to the enactment of the criminal sexual conduct code, the only penal sections criminalizing the instant category of conduct were the indecent liberties statute which was limited in operation to victims under the age of sixteen. MCL 750.336; MSA 28.568, repealed by 1974 PA 266, and the assault and battery statute, MCL 750.81; MSA 28.276.

The fourth-degree criminal sexual conduct statute expanded the protection against sexual batteries and increased the potential penalty from a ninety-day to a two-year misdemeanor. Today's decision annuls this protection leaving defendant potentially subject only to a simple assault and battery crime.

Under the majority opinion, the jury must find that the complainant was physically helpless throughout the sexual contact in order to convict the defendant. The concurrence presumably would find force if the victim had acquiesced in the contact. Either construction has the effect of limiting the full protection afforded by the statute. Where the victim awakes while the contact continues, the protection afforded by the statute is substantially eroded by the majority opinion because of the inability to conclude that sexual contact was with a "physically helpless" person. Protection is eroded by the concurrence because of the inability to conclude that the victim was coerced into submission. Further, because the majority opinion defines "accomplish" as "begin" and because contact through surprise or concealment is not prohibited by the statute, the net effect of both opinions is to provide *no* protection either to a woman who is the victim of an unlawful sexual contact while she is resting, but not asleep, or to a woman who immediately terminates a sexual contact.

Beyond the result in this case, the reliance by the majority opinion on the rationale of the decision of the California intermediate appellate court in *People v Kusumoto*,[2] carries with it disturbing implications for the continued efficacy of the Michigan act. The majority opinion quotes *Kusumoto* as follows:

> Were we interpreting a common law crime in the present case, we would have no trouble concluding that the essential element of rape and other sexual assaults is the lack of consent and

---

Further, if the circumstances of this assault are not within the purview of the act, it is clear that the offensive "grab" of intimate parts that occurs between strangers or acquaintances is likewise not protected.

[2] 169 Cal App 3d 487; 215 Cal Rptr 347 (1985).

that the concept of force "plays merely a support-
ing evidentiary role." We deal here, however, with
a statute passed by the Legislature which requires
that the act be accomplished "against the victim's
will by means of force . . . ."

\* \* \*

*"The force to which reference is made is not the
force inherent in the act of penetration but the
force used or threatened to overcome or prevent
resistance by the female." [Id., 493.]*

Whatever the merit of the California court's
interpretation of the California statute, it cannot
be concluded that the Legislature of this state
intended to continue to define force by measuring
the degree of resistance by the victim. Nonresis-
tance is not an element of the offense, although
consent would clearly be a total defense. Our
statute focuses on the defendant's behavior and
the lack of consent. The use of force, coercion, or other
circumstances listed in the act illustrates those
circumstances which play "a supporting eviden-
tiary role" in establishing a prima facie case of
nonconsent. To conclude that the Legislature in-
tended to permit nonconsensual sexual contact to
fall outside the reach of this statute is to distort
the intent of the Legislature in spite of words
clearly chosen to avoid the very argument adopted
in *Kusumoto* and accepted by the majority opin-
ion.

The conduct prohibited under the code is assaul-
tive conduct against the sexual privacy of another
person. The offense is the invasion of that privacy
by force, coercion, or other undue advantage.[3] The
definition of force described under the statute at
issue includes not only the traditional concept of

[3] Boyle, *The criminal sexual conduct act,* 43 Detroit Lawyer 6, 11
(October, 1975).

force involving the overpowering of another's will, but also a sexual touching brought about involuntarily. So defined, "force" includes either a contact which occurs while the victim is in fear, or a contact which occurs before consent can be given or refused.

## CONCLUSION

The defendant was convicted by a jury of using force or coercion to accomplish a sexual contact in violation of the fourth-degree criminal sexual conduct statute, MCL 750.520e(1)(a); MSA 28.788(5)(1)(a). The evidence at trial supports that conviction.

The issue of surprise and concealment as an element of the offense would have been raised had the trial judge instructed that the jury could find that surprise or concealment constituted force or coercion. He did not do so. Instructional error is not claimed, nor is it claimed that there was a variance between the pleadings and the proof. I would reverse the decision of the Court of Appeals and reinstate the judgment of the trial court.

RILEY, C.J. I concur in the result Justice BOYLE would reach for the reasons stated in the first portion of section I of her dissent. The complainant awoke to find a strange man touching her. The touching was nonconsensual and continued for a time after complainant awoke. The complainant testified that she was fearful.

There can be no question that the victim's fear was reasonable. Therefore, the unpermitted touching occurred, and was accomplished while the victim was in reasonable fear of dangerous consequences.