*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 15, 2025
10:32 AM

Plaintiff-Appellee,

v

No. 367214
Muskegon Circuit Court
LC No. 2021-004527-FC

JERMAINE JAQUAN BOLTON,

Defendant-Appellant.

Before: O'BRIEN, P.J., and BOONSTRA and WALLACE, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of first-degree murder committed in the perpetration of, or attempt to perpetrate, carjacking, MCL 750.316(1)(b), also known as felony murder; second-degree murder, MCL 750.317; and two counts of carrying or possessing a firearm when committing or attempting to commit a felony (felony-firearm), MCL 750.227b(1). The trial court sentenced defendant to serve: concurrent sentences of life imprisonment without the possibility of parole (LWOP) for the crime of felony murder and 525 months to 90 years' imprisonment for second-degree murder. The court also sentenced defendant to two years' imprisonment for the first felony-firearm conviction, to be served consecutive to the felony murder sentence, and for the second felony-firearm conviction, the court likewise sentenced defendant to two years' imprisonment to be served consecutive to the sentence for second-degree murder.

Defendant argues on appeal that the evidence at trial was insufficient for a jury to reasonably conclude that he committed felony murder because he did not intend to commit the predicate felony of carjacking at the time of the murders. Defendant also argues that the jury's verdict was against the great weight of the evidence because the defense proved by a preponderance of the evidence that defendant was legally insane, and the prosecution failed to prove defendant's sanity beyond a reasonable doubt. Lastly, defendant argues that his mandatory LWOP sentence violated the Michigan Constitution's prohibition on cruel or unusual punishment, Const 1963, art 1, § 16, because he was 19 years of age at the time that he committed the murders.

We affirm defendant's convictions, but reverse and remand defendant's LWOP sentence because the Michigan Supreme Court's decision in *People v Taylor*, ___ Mich ___; ___ NW3d

-1-

___ (2025) (Docket Nos. 166428 and 166654), holds that it is unconstitutionally cruel or unusual to impose an LWOP sentence on a defendant who was 19 or 20 years old at the time that they committed the crime on which that sentence is based without following the individualized sentencing procedures of MCL 769.25. *Id*. at ___; slip op at 37-38.

## I. RELEVANT FACTS

The case involves the September 2020 shooting and subsequent deaths of Jermaine Bolton, Sr., and Stacey Johnson by defendant, who is Bolton, Sr.'s son. Defendant was seen behaving erratically outside his grandfather's home before gaining entry, leading to a confrontation with Bolton, Sr., and Johnson. During the altercation, defendant repeatedly shot Bolton, Sr., and Johnson, and then fled in Bolton, Sr.'s SUV. Johnson died on the day of the incident, while Bolton, Sr., succumbed to his injuries in October 2020. Defendant exhibited odd behavior in custody, alternated between admitting to the shootings and claiming self-defense, and was later found incompetent to stand trial due to his exhibiting symptoms of a thought disturbance, i.e., psychotic-type symptoms associated with mental illnesses like schizophrenia. After treatment, he was restored to competency by June 2021.

Dr. Steven Schostak, a Ph.D. forensic psychologist employed by the State of Michigan's Center for Forensic Psychiatry, evaluated defendant for criminal responsibility and concluded that his symptoms were likely due to voluntary substance use, and for that reason did not meet the criteria for legal insanity. In contrast, defense expert Ph.D. psychologist Dr. Jeffrey Wendt's opinion was that defendant was experiencing his first episode of emergent paranoid schizophrenia and that he was legally insane at the time of the murders.

At the close of the prosecution's proofs, the trial court granted defendant's motion for directed verdict as to the felony-murder charge arising from the alleged carjacking of Bolton, Sr., as he was not in possession of the SUV, but denied the motion as to the felony murder charge arising from the alleged carjacking of Johnson. This appeal follows defendant's conviction.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the evidence was insufficient for a reasonable jury to convict him of the felony murder of Johnson because he did not form the intent to steal the SUV until after he had already shot her.

We review de novo claims of insufficient evidence in a criminal case. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). "In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted). We are "*required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *Id*. (quotation marks and citation omitted).

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " *People v Patterson*, 428 Mich 502, 525; 410 NW2d 733 (1987), quoting *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). See US Const, Am XIV. Circumstantial evidence and reasonable inferences arising from that evidence can be sufficient to prove the elements of a crime. *Oros*, 502 Mich at 239. "It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id*. (quotation marks and citation omitted). A defendant's intent may be inferred from circumstantial evidence. *People v Kenny*, 332 Mich App 394, 403; 956 NW2d 562 (2020).

Michigan's felony-murder statute, MCL 750.316(1)(b), elevates second-degree murder to first-degree murder if the murder was committed in the commission of one of the predicate felonies listed in the statute, including carjacking. *People v Reichard*, 505 Mich 81, 87; 949 NW2d 64 (2020). A person commits carjacking when, in the course of committing a larceny of a motor vehicle, they use force, violence, the threat of force or violence, or otherwise put in fear any operator, passenger, person in lawful possession of the motor vehicle, or any person lawfully attempting to recover the motor vehicle. MCL 750.529a(1). In turn, the common law elements of larceny in Michigan are: (1) a trespassory taking and (2) carrying away (3) of personal property (4) of another (5) with the intent to steal that property. *People v March*, 499 Mich 389, 401; 886 NW2d 396 (2016).

> "[P]erpetration" as used in the felony-murder statute contemplates something beyond the definitional elements of the predicate felony. Michigan courts have recognized this broader common-law meaning through the adoption of the "res gestae" principle, which holds that a murder committed during the unbroken chain of events surrounding the predicate felony is committed "in the perpetration of" that felony. *People v Gillis*, 474 Mich 105, 125; 712 NW2d 419 (2006).

When evaluating whether sufficient evidence exists to support a felony-murder conviction, we look to four factors to determine if the murder was committed "in the perpetration of, or attempt to perpetrate" a predicate felony: (1) the amount of time passing between the commission of the predicate felony and the murder; (2) the physical distance between the scenes of the respective crimes; (3) the causal relationship between the crimes; and (4) whether there was a continuity of action between the predicate felony and the murder. MCL 750.316(1)(b); *People v Gillis*, 474 Mich 105, 125-133; 712 NW2d 419 (2006).

Viewing the evidence and reasonable inferences in the light most favorable to the prosecution, the jury could reasonably find that Johnson was in lawful possession of the SUV and stood as an obstacle between defendant and escaping the scene with the SUV; an obstacle that he chose to overcome by carjacking with deadly force. The evidence in this case demonstrated that Johnson was either in the SUV when she was shot, or was sufficiently close to its open door that a substantial amount of her blood was documented inside of the passenger compartment, including on the console and passenger seat, as shown by genetic testing and the photographs of the interior

of the SUV admitted at trial. Johnson also drove the SUV to the scene, and a jury could reasonably infer that she had lawful possession of the SUV.[1]

With this sufficiency of the evidence argument, defendant attempts to draw a dividing line between the murders, which happened first, and the theft of the SUV that followed, such that he could not have been found guilty the predicate felony of carjacking. However, a reasonable jury could infer that defendant, after shooting Bolton, Sr., decided to steal the SUV to escape the scene and then shot Johnson in order to effectuate that intent. It is for the jury to determine what inferences may be fairly drawn from the evidence, which includes circumstantial evidence. See *Oros*, 502 Mich at 239. The prosecution is not required to disprove defendant's theory that he formed the intent to steal the SUV after the murders were already committed; instead, the prosecution is required to prove the elements of the crime beyond a reasonable doubt. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "It is not obligated to disprove every reasonable theory consistent with innocence to discharge its responsibility; it need only convince the jury in the face of whatever contradictory evidence the defendant may provide." *Id*. (quotation marks and citation omitted).

The facts of the present case are similar to those of a case relied upon by the prosecution, *People v Kelly*, 231 Mich App 627; 588 NW2d 480 (1998). In *Kelly*, the deceased victim's mutilated body was found in her home and several items of property were missing, including her car. The defendant admitted to killing the victim, and the evidence showed that he took the victim's car and tried to sell the property he stole from her, later that same evening and the next day. *Id*. at 637, 642. He was convicted of first-degree premeditated murder, first-degree felony murder and armed robbery (the predicate felony). The defendant argued that the intent to steal was not formed until after the homicide, meaning there was insufficient evidence to prove the predicate felony necessary for the felony-murder conviction. This Court disagreed, noting that the defendant lacked transportation and, therefore, needed the victim's automobile in order to flee the crime scene. We found that "[a] reasonable jury could conclude that [the] defendant formulated the intent to steal the victim's property before or at the time of the actual killing." *Id*. at 643. Likewise, in the present case, defendant did not have his own transportation and needed the SUV to escape. Thus, a reasonable jury could conclude that defendant formulated the intent to steal the SUV before or at the time of the actual killing of Johnson.

---

[1] Although defendant does not argue on appeal that Johnson did not lawfully possess the vehicle at the time of the shooting, we note that her presence just outside of the vehicle, if true, would not affect the issue of whether or not she lawfully possessed it. See *People v Hogan*, unpublished per curiam opinion of the Court of Appeals, issued March 17, 2015 (Docket No 321214). In *Hogan*, the victim exited her vehicle at a gas station, entered and exited the store, and was returning to her vehicle when one of the defendants brandished a gun and demanded her keys. *Id*. at 1. Considering those facts, we determined that the victim was present and in lawful possession of her vehicle. *Id*. at 2. In the present case, Johnson was likewise present and in lawful possession of the vehicle, which she either occupied or had just exited at the time she was shot by defendant. Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, this Court may nonetheless consider such opinions for their instructive or persuasive value. *Kennard v Liberty Mut Ins Co*, 341 Mich App 47, 53 n 2; 988 NW2d 797 (2022).

Viewing the evidence and reasonable inferences drawn therefrom in the light most favorable to the prosecution, the *Gillis* factors of (1) time; (2) place; (3) causation; and (4) continuity of action, reasonably support a finding that defendant murdered Johnson in the perpetration of a carjacking. The murder and carjacking took place within a short period of time; both crimes occurred in the same physical location; the jury could reasonably infer that defendant murdered Johnson to effectuate the carjacking; and the crimes occurred in a continuous course of action (i.e., without defendant having reached a point of "temporary safety" in the interim, *Gillis*, 474 Mich at 131-133). Accordingly, we conclude that sufficient evidence supported defendant's conviction of felony murder.

## B. NOT GUILTY BY REASON OF INSANITY DEFENSE

Defendant next argues that that Dr. Wendt's testimony proved by a preponderance of the evidence that defendant was suffering from organic schizophrenia, which made him legally insane at the time of the murders. Defendant further argues that Dr. Wendt's testimony so impeached Dr. Schostak's testimony that it was deprived of any probative value. Specifically, defendant contends Dr. Schostak's opinion regarding the cause of defendant's psychotic-type symptoms "turned on a dime" (by which defendant appears to mean Dr. Schostak flip-flopped) from when he found defendant incompetent on December 7, 2020, to when he subsequently found defendant did not meet the statutory criteria for legal insanity (at the time he committed the criminal offenses) at his June 17, 2021 criminal responsibility evaluation. Defendant also appears to contend that Dr. Schostak's conclusions as to criminal responsibility were not based on evidence. Defendant raised these arguments in a motion for a new trial after his conviction, which the trial court denied.

We review for abuse of discretion a trial court's denial of a motion for a new trial on the ground that the verdict was against the great weight of evidence. *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001). The trial court abuses its discretion when its decision "falls outside the range of reasonable and principled outcomes" or when the court "makes an error of law." *People v Christian*, 510 Mich 52, 75; 987 NW2d 29 (2022) (quotation marks and citation omitted).

"The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003). Conflicting testimony, even if impeached, is insufficient ground for a new trial unless directly conflicting testimony was so impeached that it was deprived of all probative value or a jury could not believe it, or if the testimony contradicted physical reality; otherwise, the trial court must defer to the jury's determination. *Id*. at 219, citing *People v Lemmon*, 456 Mich 625, 645-647; 576 NW2d 129 (1998).

The defense of legal insanity is set out in MCL 768.21a. "The defendant has the burden of proving the defense of insanity by a preponderance of the evidence." MCL 768.21a(3).

In his brief, defendant relies upon *People v Murphy*, 416 Mich 453, 463-464; 331 NW2d 152 (1982), wherein this Court held that "[o]nce any evidence of insanity is introduced. . . the prosecution bears the burden of establishing defendant's sanity beyond a reasonable doubt." However, that portion of *Murphy* was subsequently superseded by the Michigan legislature's

amendment of MCL 768.21a to add Subsection (3), providing that "[t]he defendant has the burden of proving the defense of insanity by a preponderance of the evidence." 1994 PA 56.

> In 1994, the Legislature amended the insanity defense statute to require criminal defendants who assert an insanity defense to prove insanity by a preponderance of the evidence. 1994 PA 56. Previously, when a defendant asserted an insanity defense, the prosecutor was required to prove beyond a reasonable doubt that the defendant was not legally insane. [*People v Stephan*, 241 Mich App 482, 484-485; 616 NW2d 188 (2000).[2]]

In affirming the jury's finding that evidence was sufficient to support the jury's verdict that the defendant was not legally insane, this Court in *People v Evans*, 335 Mich App 76; 966 NW2d 402 (2020), made clear that the prosecution bears no burden with regard to proving defendant's sanity (i.e., disproving an insanity defense):

> Because the law presumes that a defendant is sane, see *People v McRunels*, 237 Mich App 168, 172-173, 603 NW2d 95 (1999), Evans was required to come forward with evidence substantiating that more likely than not she was legally insane when she committed the crime. The prosecutor was not required to present any evidence on this score. See *People v Mette*, 243 Mich App 318, 330, 621 NW2d 713 (2000) ("The prosecution is not shouldered with the burden of proving the failure of an affirmative defense."). And "if a defendant produces sufficient evidence of the elements of [an affirmative] defense, then the question whether the defendant has asserted a valid defense is for the jury to decide." *People v Kolanek*, 491 Mich 382, 411-412, 817 NW2d 528 (2012). [*Id*. at 85-86].

Defendant essentially asks us to reweigh the credibility of the respective expert opinions to discount Dr. Schostak's conclusion that defendant's legal insanity was the result of voluntary use of controlled substances in favor of Dr. Wendt's conclusion that defendant's legal insanity was a psychotic break caused by his first episode of emerging paranoid schizophrenia. However, "[i]t is the province of the jury to determine questions of fact and assess the credibility of witnesses." *People v Anderson*, 322 Mich App 622, 632; 912 NW2d 607 (2018) (quotation marks omitted), citing *Lemmon*, 456 Mich at 637. There is no basis in the record to conclude that Dr. Schostak's

---

[2] Notably, the *Stephan* Court observed that the 1994 amendment to MCL 768.21a conflicted with MCL 768.36(1) (the guilty but mentally ill verdict statute), which then provided that the prosecutor has "the burden of proving that the defendant was not legally insane and should not be exculpated on the basis of mental infirmity." *Stephan*, 241 Mich App at 493-494. In apparent response, the legislature subsequently amended MCL 768.36 to provide that a trier of fact may find a defendant guilty but mentally ill if they: are guilty of an offense beyond a reasonable doubt, have proven by a preponderance of the evidence that they were mentally ill when they committed the offense, and have not established by a preponderance of the evidence that they lacked substantial capacity to appreciate the nature and quality or the wrongfulness of their conduct or to conform their conduct to the requirements of the law, i.e., to likewise require a defendant to prove the insanity defense by a preponderance of the evidence. MCL 768.36(1); 2002 PA 245.

testimony was without probative value or contrary to physical reality, despite defendant's disagreement with his methods and conclusions. See *Musser*, 259 Mich App at 219.

A reasonable jury may have believed Dr. Schostak's conclusion that defendant's inability to understand his own actions was caused by his voluntary drug use, such that he did not meet the definition of legal insanity.[3] Alternatively, a reasonable jury could have believed that defendant was not legally insane because he was simply faking his symptoms and that he killed Bolton, Sr., and Johnson because he was confronted about breaking into the grandfather's home and stealing drugs. Defendant was heard on a phone call saying that he would "act a nut" if denied bond, and the video of defendant's arraignment, which was shown to the jury, appears to show precisely that. A witness also observed defendant fire a gun into the air, argue with Bolton, Sr., and twice ask, "I can't come to my uncle house and get high?" Further, several witnesses testified about defendant's long history of drug use.

Regardless of why the jury concluded that defendant was not legally insane at the time of the murders, defendant's motion for a new trial was based solely on conflicting testimony and the credibility of the expert witnesses. It was the jury's role to evaluate the evidence, weigh the credibility of the witnesses, and make the ultimate findings of fact. See *Anderson*, 322 Mich App at 632. Accordingly, the trial court did not abuse its discretion by denying defendant's motion for a new trial because defendant failed to show that the verdict was against the great weight of evidence.

## C. MANDATORY LIFE WITHOUT PAROLE AS CRUEL OR UNUSUAL PUNISHMENT

Lastly, defendant argues that the imposition of a mandatory LWOP sentence for first-degree murder pursuant to MCL 750.316 is unconstitutional under the Michigan Constitution's prohibition against cruel or unusual punishment as applied to him because he was 19 years old when he committed the first-degree murder of Johnson. See Const 1963, art 1, § 16.

As noted in the Michigan Supreme Court's recent decision in *Taylor*:

Whether a legislatively imposed mandatory punishment violates Const 1963, art 1, § 16 is a question of law. This Court reviews de novo questions of constitutional law. [*Taylor*, ___ Mich at ___; slip op at 7.]

Further, "[t]he ultimate authority with regard to the meaning and application of" Michigan's Constitution rests with the Michigan Supreme Court. *Id.*, quoting *People v Parks*, 510 Mich 225, 245; 987 NW2d 161 (2022) (quotation marks and citation omitted).

What punishments qualify as cruel or unusual are not fixed and are informed by "evolving standards of decency that mark the progress of a maturing society." *Id.*, quoting *Parks*, 510 Mich

---

[3] "An individual who was under the influence of voluntarily consumed or injected alcohol or controlled substances at the time of his or her alleged offense is not considered to have been legally insane solely because of being under the influence of the alcohol or controlled substances." MCL 768.21a(2).

at 241 (quotation marks and citation omitted). That is, "this standard is progressive and is not fastened to the obsolete but may acquire meaning as public opinion becomes enlightened by a humane justice." *Id*., quoting *Parks*, 510 Mich at 241 (quotation marks and citation omitted). The Michigan Constitution's prohibition against "cruel *or* unusual" punishments, Const 1963, art 1, § 16, is necessarily broader than the Eighth Amendment to the United States Constitution's prohibition against "cruel *and* unusual" punishment, US Const, Am VIII. *Id*. at ___; slip op at 8, quoting *Parks*, 510 Mich at 242 (quotation marks and citation omitted).

In 1976, mandatory LWOP sentences were deemed to not constitute cruel or unusual punishment under Const 1963, art 1, § 16 by the Michigan Supreme Court's opinion in *People v Hall*, 396 Mich 650, 657-658; 242 NW2d 377 (1976), overruled in part by *Parks*, 510 Mich at 255 n 9, and *Taylor*, ___ Mich at ___; slip op at 36.

Then, in 2022, the Michigan Supreme Court in *Parks* examined whether mandatory LWOP sentences constituted cruel or unusual punishment for defendants who committed first-degree murder when they were 18 years old. The Court considered scientific research finding that the brain of an 18-year-old is exceptionally neuroplastic, yet remains in an important stage of development at which a person's capacity for risk-assessment, self-control, planning, and emotional and social maturity are still developing. *Parks*, 510 Mich at 250-253. That is, 18-year-olds are more prone to poor, risky decisions and the influences of others, which makes them more likely to commit crimes, but they also retain a significant capacity to change, grow, and mature. The Court considered that the brain of an 18-year-old is more alike to the brain of a juvenile than that of a matured adult, and the Court further noted that there is no meaningful distinction between the brain at 17 years old and the brain at 18 years old. *Id*. at 252. The Court concluded that mandatory LWOP sentences for 18-year-old defendants are a cruel or unusual punishment and, therefore, unconstitutional under the Michigan Constitution. *Id*. at 265-266. However, the Court did not extend this holding to defendants over 18 years of age. *Id*. at 245.

Since this appeal was filed in August 2023, new controlling precedent has emerged. The Michigan Supreme Court issued an opinion on April 10, 2025, in the consolidated cases of *People v Czarnecki* and *People v Taylor*, holding that *mandatory* LWOP sentences under MCL 750.316 are unconstitutionally cruel or unusual punishment as applied to defendants who were 19 years old or 20 years old when they committed the crime for which they were convicted. *Taylor*, ___ Mich at ___; slip op at 2. The Court held that a 19- or 20-year-old defendant may only be sentenced to LWOP in accordance with the procedures set out in MCL 769.25, e.g., the prosecution must timely file a motion seeking a LWOP sentence and then the trial court must hold a hearing on the motion and consider the factors articulated in *Miller v Alabama*, 576 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012). *Taylor*, ___ Mich at ___; slip op at 37-38.

The *Taylor* decision expressly applies retroactively to cases on collateral review, and, therefore, applies to this case because defendant received a mandatory LWOP sentence, and he was 19 years old when he committed the felony murder of Johnson. See *id*. at ___; slip op at 37.

-8-

Defendant was not sentenced pursuant to the individualized procedures in MCL 769.25. Accordingly, we vacate defendant's LWOP sentence for first-degree murder and remand to the trial court for resentencing consistent with *Taylor*.

Affirmed in part; vacated and remanded in part. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Randy J. Wallace